## UNITED STATES v. FISCHER.

### No. 729–M.

District Court, S. D. Florida,
Miami Division.

Dec. 16, 1942.

Herbert S. Phillips, U. S. Atty., of Tampa, Fla., and Ernest L. Duhaime, Asst. U. S. Atty., of Miami, Fla., for plaintiff.

A. C. Franks, of Miami, Fla., for defendant.

HOLLAND. District Judge.

Complaint was filed September 11, 1942, under 8 U.S.C.A. § 738, wherein it was

prayed that an order be entered revoking and setting aside the decree of naturalization heretofore made in favor of the defendant, Frank Seraph Fischer, and for other relief. Answer was filed November 10, 1942, and testimony was taken over a period of several days.

The defendant, prior to the 8th day of November, 1935, was a native and citizen of the German Reich. He entered the United States of America on May 6, 1923, and now resides in Miami, Florida, within the Southern District of Florida, and within the jurisdiction of this court. On July 20, 1935, defendant filed his petition for naturalization in this court. He took the oath of allegiance on November 8, 1935, on which date this court entered its order admitting him to citizenship in the United States of America, and thereupon certificate of naturalization was issued to him.

Defendant is a furniture factory worker; has no criminal record; is a married man with family, and has lived as the record discloses a decent law abiding existence for the period of time about which testimony was introduced. His mother still lives in Germany, also a sister or sisters. He speaks English fairly well, and while he has difficulty in free expression of his thoughts, seems to understand fairly well the English language. Before and since December 7, 1941, his fellow workers or some of them have resented Pro-Axis leanings on defendant's part, but Fischer claims he is misunderstood; he claims that expressions as to conditions in Germany are in comparison of the Germany as it was when he emigrated, and the Germany as he saw it in 1937 when he made a visit to the country of his birth. Defendant is a church member, and states he prays for peace but not victory. In response to requests for his purchasing War Bonds, he has no voluntary desire to purchase as he feels the bonds would make possible the bombing of his own mother. When he realized it was a duty to buy bonds, he claims his conscience was eased because of the duty aspect of the case, and he has now made some purchase of a bond or bonds. He has been heard to make Pro-Axis statements since our country was embroiled in war with Germany, but he claims he was misunderstood, and his expressions were in regard to money or financial influences as actuating war.

The court is confronted with the difficult task of attempting to look into the mind of an individual. By one's acts and words we are entitled to form a judgment, in the light of explanations made by defendant and argument of counsel as to what was in the subject's mind. The defendant explains that fragmentary portions of conversations are to be interpreted in the light of a comparison between his native land as known by him when he left its shores, and the native land as observed by defendant on a subsequent visit, not a comparison between the native land and the adopted country. The defendant injects into the case the influence of religion and the love and devotion naturally borne for a parent.

A naturalized citizen, broadly speaking, enjoys all the rights of the native citizen, except so far as the Constitution makes the distinction, Const.Art. 2, § 1, cl. 4, Osborn v. U. S. Bank, 9 Wheat. 738, 22 U.S. 738, page 828, 6 L. Ed. 204, and this constitutional exception is limited alone to the occupying of the office of President of the United States.

An alien becomes a citizen by a statutory method, a judicial proceeding, success in which to the petitioner culminates in an order of court in compliance with which a certificate of citizenship issues to the naturalized citizen. The new citizen enjoys the same rights prescribed by the Constitution as does the native citizen. The enjoyment of the freedom of the press, freedom of speech, the right to bail, and other rights guaranteed by the Constitution are common to both. But fraud in law undermines and voids that which is secured or obtained by fraudulent means. This is an equity proceeding, and the last statement is peculiar to courts of equity.

In the proceedings brought here, not only are general principles of equity to be considered, but Congress has provided for the institution and conducting of such proceedings. The cancellation of certificates fraudulently or illegally procured was provided by the Act of June 29, 1906, 34 Stat. 601, § 15. Again in 1940 the revocation of naturalization was provided for by the Act of Congress, 8 U.S.C.A. § 738. A comparison of the two Acts discloses that the subject matter of subsections "a", "b", "c", "f" and "g" of the 1940 Act follow rather closely

the language of the 1906 Act. Subsections "d" and "e" of the Act of 1940 constitute added provisions. There is no particular reason to make reference to the two Acts in this decree other than to note that in subsection "d" of the Act of 1940 a distinction is made between actual fraud and fraud generally. I hold that this distinction was present in the Act of 1906 by implication, but by specific reference to actual fraud in the Act of 1940 the fact is made clear that the fraud mentioned in subsection "a" of the 1940 Act includes both actual and constructive or implied fraud.

The statute provides for the revocation of naturalization both on the ground of fraud, and on the ground of illegal procurement of the citizenship status. A good definition of what is meant by illegal procurement is contained in United States v. Albertini, D.C., 206 F. 133. In the case before this court the basis of relief is not illegal procurement, but is alleged fraud.

The task of making a decision here may be narrowed to the question of whether the defendant was guilty of fraud in the procurement of his citizenship papers by reason of what he said and did since the United States entered World War II, and whether such acts and deeds demonstrate that he had withheld his full and complete allegiance to the United States at the time he was granted citizenship rights, so that it now can be said that he was guilty of fraud in their procurement. I hold that the defendant, judged by his acts and words since our entrance into war with Germany, was guilty of the matters charged in the complaint, and that the relief prayed should be granted. It, therefore, becomes unnecessary to discuss the conduct of defendant prior to this country's entrance into the War. The task of deciding a case of attempted revocation of citizenship rights is greater when a naturalized citizen in the exercise of free speech and thought entertains and expresses opinions friendly to his native land, before his adopted country becomes actually embroiled in war with the mother country of the naturalized citizen, and who with such declaration of war turns about face and actively, voluntarily and wholeheartedly manifests full support and sympathy with his adopted country against his native country, and heartily supports the

war activities of his adopted country. But we do not have such a case here. In the instant case the acts and words of the defendant since the United States became at war with Germany are sufficiently lacking in Pro-Americanism as to reach the conclusion that there was no full and complete abjuration of allegiance to the mother country with a corresponding commitment of allegiance to the adopted country, without which it must be said there was fraud in procuring the issuance of citizenship certificate. Actual fraud is not a necessary element of the charge warranting the relief sought by this complaint under the statute. The new citizen must hold back nothing in the way of allegiance. He should mark well the fact that an issue may in the future arise between his native and adopted lands, and be prepared to consistently comply with the solemnly administered oath of allegiance at all times in the future, and when future conduct demonstrates a lack of that full and complete allegiance, then it must be said that it did not exist at the time application for citizenship was made.

The record in this case justifies the relief sought by the petition. An order of cancellation of defendant's certificate of naturalization will be entered, the same to be submitted by the United States Attorney.