### UNITED STATES v. MEYER.

### Civ. No. 854.

District Court, S. D. Texas, Houston Division.

Feb. 23, 1943.

Douglas W. McGregor, U. S. Dist. Atty., and Miles L. Moss, Asst. Dist. Atty., both of Houston, Tex., for the Government.

Garvey Brown and Wm. M. Hatten, both of Houston, Tex., for defendant.

HANNAY, District Judge.

This is a civil action in the nature of a bill in equity brought under the appropriate statute, Nationality Act of 1940, § 338, 8 U.S.C.A. § 738, to cancel the Certificate of Naturalization of Dr. Heinrich Karl Ernst Martin Meyer, age thirty-nine years, who came to this country about July 5, 1930, and has been a professor of the German language at Rice Institute in Houston, Texas, since that date. In this connection, the Court makes the following findings of fact:

1. On application filed on July 23, 1935, the defendant became a naturalized citizen of the United States on November 6, 1935. In order to do so, he took the following oath in open court: " * * * he will support the Constitution of the United States and that he absolutely and entirely renounces and abjures all allegiance and fidelity to any foreign prince, potentate, state or sovereignty, and particularly by name to the prince, potentate, state or sovereignty of which he was before a citizen or subject; that he will support and defend the Constitution and laws of the United States against all enemies, foreign and domestic, and bear true faith and allegiance to the same." And he had theretofore signed a verified petition as follows: " * * * that it is his intention to become a citizen of the United States and to renounce absolutely and forever all allegiance and fidelity to a foreign prince, potentate, state or sovereignity, and particularly by name to the prince, potentate state or sovereignty of which he, at the time of filing his petition, may be a citizen or subject, and that it is his intention to reside permanently in the United States." In taking his oath of allegiance, he particularly renounced any allegiance to The German Reich.

2. Defendant was married to an American citizen in 1936, and they visited Ger-

many together in the years 1936 and 1938. They were divorced on December 19, 1942 —there were no children born of such marriage.

3. Before and after his naturalization, defendant lectured, argued, wrote many letters and had a number of articles published—as a result of which much documentary evidence was introduced during the five day trial of this case.

4. From the defendant's utterances, writings and conduct since his said naturalization, the following, among others, are the things that he said and did:

(a) He frequently contrasted the German people with the people of the United States to the disadvantage of the people of his adopted land.

(b) That prior to the United States' entry into this war, he argued that it would be improper for the United States to enter the war because the war would be of short duration, would be costly to the United States and that Germany in the end was bound to win anyway.

(c) That no moral question was involved in the war and that only success counted. In this connection he is described as showing great happiness and elation over German aggression and victories in Poland, the Netherlands, Belgium and particularly in France.

(d) That he frequently was "disgusted" with America, considered the American people "stupid"; that he believed American patriotism to be "narrow nationalism" and stated at least on one occasion that he "could never be a real American".

(e) That he many times used the words "our country" and "my country" meaning Germany, and "your country" meaning the United States, and on one occasion spoke to a French colleague disrespectfully of "those Americans".

(f) That he became an American citizen only because "it was convenient" and because "I can thereby say anything I want to"; and that he would remain in "this country" only as long as it was to his material advantage.

(g) That he associated on very friendly terms with Baron Von Spiegel, former German Consul at New Orleans, Louisiana; with Schmitz, the registered propaganda agent of The German Reich, and Gerhardt Strube, now in a detention camp.

(h) That he said in April, 1942, it would be a good thing to have a "milder form of Fascism in America";

(i) That he wrote in September, 1939, in effect that America was to blame for this war because of its breaking its promises made in the last war and in its violation of the Monroe doctrine and but for which Germany would have won the last war.

(j) That he wrote on July 19, 1940, "Germany will win the war anyway and as success has always succeeded, this would ultimately be to the benefit of German studies even though at first there may be a good deal of antagonism," and also "I think a German victory will be a blessing to Europe and to the world."

(k) That he wrote on September 28, 1942, to Mr. and Mrs. Merkel "I should most like to win the case (meaning this case) and would become an enemy alien, for I myself should, of course, not stay here (meaning America) if I am treated like this."

(l) And further on the last mentioned date, he also wrote: "I laugh and feel sorry for the poor devils who have done me the favor of saving me thus from the Draft Board on the 28th, that is today. Well Germany has put in custody a few hundred of Americans, so everything will take its course." This latter meaning doubtless that if anything happened to him that Germany would even the score a hundred fold.

(m) That he wrote in a letter dated July 23, 1940: "I have come to the conclusion that I should go back to Germany * * * and have made inquiries about having my citizenship annulled."

(n) That on or about the 30th day of September, 1940, the defendant voluntarily applied at the office of the United States District Clerk, at Houston, Texas, for the purpose (as written by him in ink) of "repatriation". On that occasion defendant said that he could not remain in this country because he was not in sympathy with the American attitude "toward The German Reich" and added "if I remain here I would be a potential Fifth Columnist." He refused to sign the oath of allegiance printed upon such application for passport. The reason that he gave for his unusual conduct was that he strongly disagreed with the American lend-lease policy. Considering his age, his return to Germany would have meant his entry into the armed service of that country.

(o) At the time of his application for passport, he told a Deputy Clerk, Mrs. Berley, that he was "thoroughly in sympathy with Germany" and did not wish to stay in the United States any longer because "while my lips may not be a Fifth Columnist, I am uncertain about this" (meaning his heart).

(p) That after the refusal to grant such passport, the defendant went almost immediately to New Orleans to confer with the German Consul, Baron Von Spiegel. He learned there that by renouncing his American citizenship, he would not revert back to his status of a citizen of Germany.

(q) In discussing this application for a passport with F. B. I. Agent Brand on or about June 18, 1942, defendant admitted that he requested repatriation to Germany because he was "disappointed with the United States abandoning the neutrality act."

### Conclusions of Law.

■■ Naturalization is a privilege and when granted is so granted upon specific conditions. These conditions are that both the application which was sworn to and the oath of allegiance that was taken were made in the utmost good faith and without any secret mental reservations. From a careful consideration of all the evidence introduced by both sides, the Court comes irresistibly to the conclusion that:

(1) The defendant did not in fact renounce allegiance to The German Reich;

(2) Defendant was not attached to the principles of the Constitution of the United States; that he did not bear true faith and allegiance to said Constitution; and

(3) That he did not intend to reside permanently in the United States.

The law on this subject is plain, is uniform and is well settled. The case of United States v. Herberger, D.C., 272 F. 278, is particularly in point. Also the case of United States v. Wursterbarth, D.C., 249 F. 908, wherein a certificate of citizenship was canceled after a lapse of more than thirty-five years. The very recent cases of United States v. Bergmann, D.C., 47 F.Supp. 765; United States v. Baumgartner, D.C., 47 F.Supp. 622; United States v. Dr. Wolfgang Ebell, D. C., 44 F.Supp. 43, and the case of United States v. Fischer, D.C., 48 F.Supp. 7, all abundantly hold that under facts where it is shown that the new citizen has not consistently and at all times shown a full and complete allegiance, then it can also be said that such allegiance did not exist at the time the application for citizenship was made. It is, therefore, ordered, adjudged and decreed:

1. That the Order granting the defendant citizenship and the Certificate of Naturalization heretofore granted to him were obtained by him through fraud and were illegally obtained, and it is ordered, adjudged and decreed that the Order of the Court made on November 6, 1935, be and it is hereby canceled and set aside;

2. That the said Dr. Heinrich Karl Ernst Martin Meyer be and he is hereby directed to surrender his certificate of naturalization to the Clerk of this Court; and

3. That Dr. Heinrich Karl Ernst Martin Meyer be and he is hereby restrained from claiming any right, privilege, benefit or advantage whatsoever under said certificate of naturalization;

4. That the costs of this action are hereby adjudged against the defendant.