## STENERMAN v. BROWNELL, Atty. Gen.

### No. 13201.

United States Court of Appeals
Ninth Circuit.

April 30, 1953.

Morris Lavine, Los Angeles, Cal., for appellant.

Walter S. Binns, U. S. Atty., and Arline Martin, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before MATHEWS, STEPHENS, and POPE, Circuit Judges.

STEPHENS, Circuit Judge.

It is alleged in the amended complaint that Wolf Stenerman, the plaintiff (sometimes spelled Stillerman or Shtilerman), was naturalized on April 27, 1928, in an Illinois state court. On April 11, 1933, while incarcerated in a Chicago jail, he signed a document prepared by an officer of the Immigration and Naturalization Service

in which it is stated that Stenerman's naturalization was obtained in violation of law in that he was not a person of good moral character attached to the principles of the United States Constitution, and that neither he nor his two witnesses disclosed his criminal record which was extensive.[1] In the document it is further said:

"[T]he undersigned hereby consents that the order so admitting him as a citizen of the United States of America be vacated and set aside, and waives all right to any further notice, subpoena, summons or other process as to such proceedings, and herewith surrenders his certificate of citizenship No. 2417637 for cancellation."

Eleven months later the United States Attorney filed an action under § 15 of the Immigration and Naturalization Act' of June 29, 1906,[2] in the United States District Court for the Northern District of Illinois to cancel Stenerman's citizenship, attaching the above mentioned document to the complaint. The required order as to personal or constructive notice was requested in the complaint. The next day after the filing of the action, the court, acting on the contents of the document, deemed that notice was unnecessary and that Sten-

[1] Title 8 U.S.C.A. (1927 Ed.) § 379: "* * * The petition shall also be verified by the affidavits of at least two credible witnesses, who are citizens of the United States, and who shall state in their affidavits that they have personally known the applicant to be a resident of the United States for a period of at least five years continuously, and of the State * * * in which the application is made for a period of at least one year immediately preceding the date of the filing of his petition, and that they each have personal knowledge that the petitioner is a person of good moral character, and that he is in every way qualified, in their opinion, to be admitted as a citizen of the United States." June 29, 1906, c. 3592, § 4, 34 Stat. 596. See amendment March 2, 1929, c. 536, § 6(a), 45 Stat. 1513; June 20, 1939, c. 224, § 2, 53 Stat. 843. See, also, Title 8 U.S.C.A. § 709, October 14, 1940, c. 876, Title I, Subchap. III, § 309, 54 Stat. 1143, which was repealed June 27, 1952, c. 477, Title IV, § 403(a) (42), 66 Stat. 280. See Title 8 U.S.C.A. § 1446, June 27, 1952, c. 477, Title III, Ch. 2, § 335, 66 Stat. 255.

Title 8 U.S.C.A. (1927 Ed.) § 382: "It shall be made to appear to the satisfaction of the court admitting any alien to citizenship that immediately preceding the date of his application he has resided continuously within the United States, five years at least, and within the State or Territory where such court is at the time held one year at least, and that during that time he has behaved as a man of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the same. * * *." June 29, 1906, c. 3592, § 4, 34 Stat. 596. See amendment March 2, 1929, c. 536, § 6(b),

45 Stat. 1513; June 25, 1936, c. 811, § 1, 49 Stat. 1925; June 29, 1938, c. 819, 52 Stat. 1247. See, also, Title 8 U.S.C.A. § 707(a), Act of October 14, 1940, c. 876, Title I, Subchap. III, § 307, 54 Stat. 1142, which was repealed June 27, 1952, 66 Stat. 280. See Title 8 U.S.C.A. § 1427 (a), Act of June 27, 1952, 66 Stat. 242.

[2] 8 U.S.C.A. (1927 Ed.) § 405: "It shall be the duty of the United States district attorneys for the respective districts * * * upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and canceling the certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured. In any such proceedings the party holding the certificate of citizenship alleged to have been fraudulently or illegally procured shall have sixty days personal notice in which to make answer to the petition of the United States; and if the holder of such certificate be absent from the United States or from the district in which he last had his residence, such notice shall be given by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the State or the place where such suit is brought." June 29, 1906, c. 3592, § 15, 34 Stat. 601; Mar. 4, 1913, c. 141, § 3, 37 Stat. 737; May 9, 1918, c. 69, § 1, 40 Stat. 544. See Title 8 U.S.C.A. § 738(a), October 14, 1940, c. 876, Title I, Subchap. III, § 338, 54 Stat. 1158 which was repealed June 27, 1952, c. 477, Title IV, § 403(a) (42), 66 Stat. 280; see Title 8 U.S.C.A. § 1451, June 27, 1952, c. 477, Title III, ch. 2, § 340, 66 Stat. 260.

erman had consented to a judgment or order of denaturalization, and proceeded in Stenerman's absence to forthwith enter judgment accordingly.

Thereafter, on January 3, 1951, Stenerman filed an action in the United States District Court for the Southern District of California against the Attorney General of the United States, and on March 12, 1951, he filed an amended complaint, the latter purportedly setting up three separate claims for relief.

It is alleged in the jurisdictional statement of the complaint that the pleader is acting under the authority of both the Declaratory Judgment Act, 28 U.S.C.A. § 2201, and under § 503 of the Nationality Act of 1940, 54 Stat. 1171, Title 8 U.S.C.A. § 903.

■ It is clear enough that the so-called First Claim and Second Claim are straight actions under the Declaratory Judgment Act and that, as the law stood at the time the judgment here appealed from was entered, the suit could not be maintained against the Attorney General without his consent.[3] Such consent was refused, hence the court was right in dismissing the claims.

It is also clear enough that the so-called Third Claim was brought under § 903, which claim can be brought in any district within which the plaintiff makes his permanent residence.[4] Stenerman alleges in his "Third Claim" that he lives as a permanent resident within the territorial limits of the court in which the action is filed; that he is a citizen of the United States; and that he is being deprived of his citizenship rights by order of the Attorney General in that he is regarded as an alien and has been

put under parole of the immigration authorities in conformity with § 150.6(f) of Title 8, Code of Federal Regulations, Immigration and Naturalization Code. Parole under this section follows an order of deportation. He prays for a declaration that he is a national of the United States. The court was right in refusing to dismiss this claim.

Each party proceeded to file a motion for summary judgment and filed affidavits in support thereof. The court denied plaintiff-appellant's motion and caused entry of a judgment accordingly.

Stenerman appeals from the orders dismissing claims one and two, and from the summary judgment entered. We have already held that the court was not in error in dismissing claims one and two.

The basis upon which the trial court entered its judgment for defendant is: That the judgment cancelling the appellant's naturalization "is a valid Judgment by Confession and said Court had jurisdiction of the parties and subject matter of the action based on said William Shtilerman's Affidavit filed in said action, which Affidavit was and is a Confession of Judgment and Waiver of service and notice."

Appellee supports the judgment on the ground that the statements of Stenerman authorized the entry of a "consent" judgment.

The difference beween judgments by "confession" and judgments by "consent" are unimportant to the issue here.

Upon such premise the court thought appellant's action was a collateral attack upon a valid judgment and as such could not succeed; that the cancelling judgment was

---

3. See Brassert v. Biddle, D.C.Conn., 1944, 59 F.Supp. 457, 462, and the same case on appeal, 2 Cir., 148 F.2d 134, 136. See also § 1503, Title 8 U.S.C.A., Act of June 27, 1952, § 360, 66 Stat. 273.

4. Title 8 U.S.C.A. (1942 Ed.) § 903: "If any person who claims a right or privilege as a national of the United States is denied such right or privilege by any Department or agency, or executive official thereof, upon the ground that he is not a national of the United States, such person, regardless of whether he is within

the United States or abroad, may institute an action against the head of such Department or agency in the District Court of the United States for the District of Columbia or in the district court of the United States for the district in which such person claims a permanent residence for a judgment declaring him to be a national of the United States. * * *" October 14, 1940, c. 876, Title I, Subchap. V, § 503, 54 Stat. 1171. Cf. new provisions of Act of June 27, 1952, § 360, 66 Stat. 273; Title 8 U.S.C.A. § 1503.

*res judicata* as to appellant's non-citizenship status; that the amended complaint failed to state a claim against the Attorney General and that defendant was entitled to judgment dismissing plaintiff's complaint.

Appellant asks reversal upon the ground that the judgment cancelling his naturalization is void because the court never acquired jurisdiction of his person, and that the statute under which the denaturalization proceeding lay was not followed as to notice required.[5]

It is obvious that the judgment cancelling Stenerman's citizenship cannot stand if the proceedings on their face show that no jurisdiction of his person was acquired. The question is then presented: Did the court have the power to receive the document signed by Stenerman as conclusive of the statements in it and proceed in Stenerman's absence and without notice to him to make the denaturalization order?

There is much in the books on the subject of judgment by confession and it will be noted in but a brief study of the subject that such judgments are generally related to the acknowledgment of debt, and are limited to permissive statutes strictly construed.[6] There is no federal statute on the subject. Of course, a party *in court* may confess to a judgment or consent that a judgment may be taken against him, but Stenerman never was in court in the denaturalization proceedings.

■ Jurisdiction over the person against whom the judgment is to run is never assumed by or through oral testimony or a statement in writing of one who is not known by the court in a legal manner to have the right to act for the person. There is no law authorizing a court to accept a statement even though signed and sworn to before an immigration officer, as conclusive proof of its contents. No matter how real and genuine the statement may appear to be, it may be entirely false or totally void because given under pressure and hence not a free act. If a court could accept such a statement as conclusive of its contents, no person would be free from the possibility of discovering, at any time, that a self-enforcing judgment had been pronounced against him without notice and without his day in court. And once so obtained, the star-chamber proceedings would protect the judgment as *res judicata*. In this case it would appear that the immigration officer who prepared the statement signed by Stenerman, or the judge in the case, was under the mistaken idea that because the officer had a right to take a statement for use in court as evidence, it was conclusive as to the statements it contained.

■ We do not doubt that after a denaturalization proceeding has begun against one he may appear and consent to a judgment against himself, and this happened in United States v. Eichenlaub, 2 Cir., 1950, 180 F.2d 314, but service cannot be obtained by short-cutting the statute through a hearsay waiver of notice and consent to a judgment. Since Stenerman had no notice and did not appear in the denaturalization proceeding, the court was wholly without jurisdiction to enter a judgment against him. In contemplation of law his naturalization has been in full force and effect since the Illinois state court granted him citizenship.

Since the cancellation judgment is null and void, it cannot be helped out here by affidavits in the instant case as to the truth of certain statements contained in the document which was signed by Stenerman. Nor can the judgment be helped out by affidavits as to the untruthfulness of Stenerman's allegations of duress.

In the case of United States ex rel. Volpe v. Jordan, 7 Cir., 1947, 161 F.2d 390, the statute authorizing denaturalization proceedings is carefully analyzed. Therein the state court granted citizenship to Volpe; shortly thereafter the same court revoked its grant. The matter reached the United States Court of Appeals by an appeal in a habeas corpus case from a United States District Court which had sustained a plea in bar. The court of appeals held that

---

5. See footnote 2, supra.

6. See Freeman on Judgments, Vol. 3, 5th Ed., Chap. XXIV; 49 C.J.S., Judgments, § 134 et seq.

the federal statute ruled the proceedings independently of local law and that no notice having been given as to the proceedings to denaturalize Volpe, the judgment was null and void. See also Bindczyck v. Finucane, 1951, 342 U.S. 76, 72 S.Ct. 130, 92 L.Ed. 100, for an analysis of the law of naturalization and denaturalization, to the effect that the federal statute is exclusive.

The orders dismissing the so-called First Claim and Second Claim are affirmed. The summary judgment is reversed and the case is remanded to the district court with instructions to take such steps as it may deem proper, all in accordance with this opinion.

Reversed and remanded.