**RUEFF**

v.

**BROWNELL, Atty. Gen.**

Civ. No. 756-51.

United States District Court,
D. New Jersey.

Nov. 17, 1953.

Riker, Emery & Danzig and Alan V. Lowenstein, Newark, N. J., Landis, Taylor & Scoll, David E. Scoll, New York City, for plaintiff.

William F. Tompkins, Newark, N. J., Edward V. Ryan, Asst. U. S. Atty., Jersey City, for defendant.

SMITH, District Judge.

This is a civil action under Section 503 of the Nationality Act of 1940, 8 U.S.C.A. § 903.[1] The plaintiff seeks a judicial declaration that she is a citizen and national of the United States. The defendant urges the dismissal of the action on the ground that the plaintiff voluntarily expatriated herself by her failure "to elect between dual citizenship" when she attained majority, and thereafter continued to reside in a foreign state. The essential facts are not disputed.

## Facts.

### I.

The plaintiff's parents were native born citizens of the United States who resided in this country previous to her birth. Her father, Charles M. Torrance, was born in Brookfield, Missouri, on June 26, 1876, and resided in this country until early in 1900, when he emigrated to Germany; her mother, Bertha E. Torrance, nee Regnier, was born in Atchison, Kansas, on September 28, 1881, and resided in this country until 1890, or a short time thereafter, when she emigrated to Germany with her parents. The plaintiff's parents were married in Germany and thereafter resided there, her father until his death in 1917 and her mother until the present time.

### II.

The plaintiff was born in Frankfort on Main, Germany, on December 14, 1910, at which time both parents were still citizens of the United States. She resided with her parents in Frankfort on Main until the death of her father in 1917, and thereafter with her mother in Heidelberg, Germany, until June 1933, when the plaintiff emigrated to London, England. She established a residence in London and did not return to Germany except on occasional visits to her mother. It is admitted that on these visits she traveled on a German passport issued some years before, but which was renewed by her in 1931 and again in 1936. We note, however, that this passport was issued in 1926 on the application of the plaintiff's mother.

### III.

The plaintiff's mother became a naturalized citizen of Germany on November 26, 1918, and the plaintiff, who was then a minor, acquired derivative citizen-

---

1. Now Immigration and Nationality Act, § 360, 8 U.S.C.A. § 1503.

ship under the naturalization laws of Germany. Thereafter the plaintiff was erroneously informed by her mother and other members of her family that she had thus lost her status as a citizen of the United States. This erroneous information was confirmed by others after she attained her majority. The testimony of the plaintiff that she was unaware of her rights until 1934 therefore seems credible.

### IV.

When the plaintiff emigrated to England in 1933 she sought employment, and, as required by law, registered as a citizen and national of Germany. However, in the following year she made inquiry regarding the status of her citizenship at the office of the American Consular Service and was there erroneously informed that, having acquired derivative citizenship in Germany by reason of the naturalization of her mother, she was no longer a citizen of the United States. There is no record of this inquiry, but the testimony of the plaintiff is indirectly corroborated by the official action of the Department of State on later applications.

### V.

The plaintiff took no further action until January of 1939, when she, intending to travel on her German passport, applied for a visitor's visa at the office of the American Consular Service at London. The consular officer, entertaining some doubt as to the status of the plaintiff's citizenship, denied the application but granted her a provisional visa which permitted her entry into the United States for the purpose of seeking a determination of her status. The plaintiff entered this country in February of the same year, and shortly thereafter consulted an attorney.

### VI.

The plaintiff executed a formal passport application, which was filed in the Department of State on March 14, 1939. The Department of State, in a letter dated April 5, 1939, advised the plaintiff as follows: "This Department has consistently held that when an American parent acquires the nationality of a foreign state in conformity with its laws and his or her minor children also acquire the nationality of such foreign country under its laws, the parent and children must be held to have lost American citizenship under the provisions of the first paragraph of Section 2 of the Act of March 2, 1907 (U.S.Code, Title 8, Section 17). Accordingly, in view of your naturalization as a German citizen through your mother's acquisition of such citizenship, you must be regarded as having lost your American citizenship and are not entitled to receive a passport of this Government." (Exhibits P–13 and D–1).

### VII.

The plaintiff again made an application for a United States passport on October 11, 1939, approximately four months after the Supreme Court decided the case of Perkins v. Elg, infra. This application, which was filed in the office of the American Consular Service at London, was denied by the Department of State. The denial of the application was apparently predicated on concommitant grounds: first, the failure of the plaintiff to elect United States citizenship, and second, her failure to establish residence in this country within a reasonable time after she attained her majority. (Exhibits P–14 and D–1).

### VIII.

The plaintiff was advised by letter dated November 10, 1939, as follows: "In view of a recent decision of the Supreme Court of the United States bearing upon the question involved in Miss Torrance's case, the Department's practice in respect to the expatriation of a minor child through a parent has been modified to the extent that a minor, being a citizen of the United States, who acquires derivatively the nationality of a foreign state through the foreign naturalization of a parent will not, in the absence of specifically applicable treaty stipulations, be considered by the Department as having lost his or her citizenship of the United States. *Provided Shortly Before or Shortly Af-*

*ter Attaining Majority the Person Concerned Manifests His or Her Election to Retain American Citizenship and to Return to the United States to Reside."* (Emphasis by the Court).

### IX.

The plaintiff filed a third application for a United States passport on August 1, 1941, approximately six months after the effective date of the Nationality Act of 1940, infra. This application, which was filed in the office of the American Consular Service at London, was denied by the Department of State on September 22, 1941. The Department of State confirmed its decision of November 10, 1939, and held that the plaintiff had expatriated herself. (Exhibit D–1).

### X.

■ The plaintiff married one· Henri Rueff, a citizen and national of Belgium, in Chelsea, England, on October 11, 1941. She thus acquired derivative Belgian citizenship under the laws of Belgium, but she did not make either a formal declaration of allegiance to Belgium or a formal renunciation of her allegiance to the United States; she therefore did not suffer expatriation under the laws of the United States. See Section 401 of the Nationality Act of 1940, 8 U.S.C.A. § 801.[2]

### XI.

The plaintiff entered this country in 1945 in the company of her husband, who, as an official of the Belgian Economic Mission, came here on business; she traveled on a Belgian passport, which expired on August 4, 1951. Her husband resigned his position in 1948 and returned to Belgium; the plaintiff remained in the United States. The plaintiff's husband re-entered the United States in 1949 as a quota immigrant, and he and the plaintiff now reside in Montclair, New Jersey.

### XII.

The plaintiff applied for a certificate of derivative citizenship on August 2, 1949. This application was denied by the Immigration and Naturalization Service on November 7, 1950. Thereafter deportation proceedings were initiated. The present action was commenced on August 3, 1951, and further action in the deportation proceedings has been held in abeyance.

### XIII.

While the plaintiff was a resident of London, she made formal application to the Home Secretary for Naturalization to be naturalized under the laws of England. This application, which was filed in September 1938, was not processed prior to the advent of the war, and action thereon was therefore suspended during the war. The plaintiff abandoned the application and therefore did not make either a formal declaration of allegiance to England or a formal renunciation of her allegiance to the United States.

### Discussion.

■ The plaintiff acquired United States citizenship at and by birth, under Section 1993 of the Revised Statutes,[3] which, prior to its amendment by the Act of May 24, 1934, 48 Stat. 797, read as follows: "All children heretofore born or hereafter born out of the limits and jurisdiction of the United States, whose fathers were or may be at the time of their birth citizens thereof, are declared to be citizens of the United States; but the rights of citizenship shall not descend to children whose fathers never resided in the United States." She acquired a derivative foreign citizenship under the laws of Germany upon the naturalization of her mother in 1918. Thereafter the plaintiff was a citizen and national of both the United States and, Germany.

■ The citizenship acquired by the plaintiff under Section 1993 of the Revised Statutes, supra, is deemed to continue, notwithstanding her acquisition of a derivative foreign citizenship during minority, unless she has been deprived of it by either operation of law or voluntary action in conformity with applicable legal

2. Now Immigration and Nationality Act, § 349, 8 U.S.C.A. § 1481.

3. Now Immigration and Nationality Act, § 301(a) (3), 8 U.S.C.A. § 1401(a) (3).

principles. Perkins v. Elg, 307 U.S. 325, 59 S.Ct. 884, 83 L.Ed. 1320; Kawakita v. United States, 343 U.S. 717, 72 S.Ct. 950, 96 L.Ed. 1249; Mandoli v. Acheson, 344 U.S. 133, 73 S.Ct. 135; see also the other cases hereinafter cited. The defendant may here prevail only upon proof that the plaintiff has been expatriated by either operation of law or her voluntary action. Ibid.

### Expatriation Act of 1907.

The defendant's objection to the present action is based primarily on Section 2 of the Act of March 2, 1907,[4] entitled "An Act In reference to the expatriation of citizens and their protection abroad." 34 Stat. 1228. The only conditions under which citizenship could have been extinguished by operation of law are defined in the initial paragraph of the cited section, which reads as follows: " * * * any American citizen shall be deemed to have expatriated himself when he has been naturalized in any foreign state in conformity with its laws, or when he has taken an oath of allegiance to any foreign state." This provision, however, is limited in its application to those who voluntarily renounced their United States citizenship and acquired foreign citizenship; it is not applicable to those who were the passive beneficiaries of derivative foreign citizenship during their minority. Perkins v. Elg, supra, 307 U.S. 343 et seq., 59 S.Ct. 884; Mandoli v. Acheson, supra, 344 U.S. 138 et seq., 73 S.Ct. 135; see also the other cases hereinafter cited. The provision may not be invoked against the plaintiff.

The defendant concedes the applicability of the principles hereinabove discussed, but argues that the conduct of the plaintiff, to wit, her failure to elect "between dual citizenship" within a reasonable time after she attained her majority and her prolonged residence in a foreign state, was tantamount to a renunciation of her United States citizenship and an election of her German citizenship. We are of the opinion that the argument is without merit.

The argument appears to be based on the second paragraph of the cited section, supra,[5] which reads as follows: "When any naturalized citizen shall have resided for two years in the. *foreign state from which he came*, or for five years in any other foreign state, it shall be presumed that he has ceased to. be an American citizen, and the place of his general abode shall be deemed his place of residence during said years: Provided, however, That such presumption may be overcome on the presentation of satisfactory evidence to a *diplomatic or consular officer* of the United States, under such rules and regulations as the Department of State may prescribe: * * *." (Emphasis by the Court.)

The defendant concedes that the quoted provision, as construed by the Supreme Court, did not impose upon a native born citizen, as a condition essential to the retention of his citizenship, a duty "to make an election and to return to this country for permanent residence" within the statutory period. Mandoli v. Acheson, supra. The defendant contends, however, that this construction is limited in its application to persons who were citizens *By Birth* under Section 1 of the Fourteenth Amendment to the Constitution, and the Civil Rights Act of 1866, 14 Stat. 27. This contention must be rejected as unsound. We are of the opinion that the construction adopted by the Supreme Court is equally applicable to persons who were citizens *By Birth* under Section 1993 of the Revised Statutes, supra. The failure of the plaintiff to elect United States citizenship and to return to this country for permanent residence within the statutory period did not result in her expatriation either voluntarily or by operation of law.

The statutory presumption created by the quoted provision, as we construe it, may be invoked only against a former alien who, after his naturalization under our laws, resided for two years in

---

4. Now Immigration and Nationality Act, § 349, 8 U.S.C.A. § 1481.

5. Now Immigration and Nationality Act, § 352, 8 U.S.C.A. § 1484.

the foreign state from which he came, or for five years in any other foreign state. The presumption may not be invoked against a citizen by birth. This view would appear to be supported by the express language of Section 6 of the Act, 34 Stat. 1229, which makes special provision for "children born outside the limits of the United States who are citizens thereof in accordance with the provisions of section nineteen hundred and ninety-three of the Revised Statutes * * *."

█ Section 6 of the Act reads as follows: "* * * all children born outside the limits of the United States who are citizens thereof in accordance with the provisions of section nineteen hundred and ninety-three of the Revised Statutes of the United States and who continue to reside outside the United States shall, *in order to receive the protection of this government*, be required upon reaching the age of eighteen years to record at an American consulate their intention to become residents and remain citizens of the United States, and shall be further required to take the oath of allegiance to the United States upon attaining their majority." It should be noted that even under this section the failure of a citizen to comply with its provisions will deprive him of his right to diplomatic protection but will not deprive him of his citizenship.

█ The second paragraph of Section 2 of the Act, supra, is not applicable. The specific conditions under which any citizen was "deemed to have expatriated himself" were clearly defined only in the first paragraph. The statutory presumption created by the second paragraph was limited in its application and invocable only against a "naturalized citizen" who, after residence in a foreign country for the statutory period, asserted a claim to the diplomatic protection ordinarily incident to his citizenship. Accord Camardo v. Tillinghast, 1 Cir., 29 F.2d 527, 529, et seq.; Thorsch v. Miller, 55 App.D.C. 295, 5 F.2d 118, 121; Haaland v. Attorney General of United States, D.C., 42 F.Supp. 13, 20; Stein v. Fleischmann Co., D.C., 237 F. 679. Compare United States v. Eliasen, D.C., 11 F.2d 785, 786;

Miller v. Sinjen, 8 Cir., 289 F. 388, 393; Schaufus v. Attorney General of United States, D.C., 45 F.Supp. 61, 64, 67; Nurge v. Miller, D.C., 286 F. 982, 984. The presumption was not invocable against a naturalized citizen who asserted a right to citizenship, as distinguished from a claim to diplomatic protection ordinarily incident to citizenship.

We are inclined to agree with the opinion of Attorney General Wickersham, 28 Op.Attys.Gen. 504, 507, 508, in which he states: "The purpose of the Act is, I think, *Simply to Relieve the Government* of the *Obligation to Protect Such Citizens* residing abroad after the limit of two or five years, as the case may be, when their residence there is not shown to be of such a character as to warrant the presumption that they intend to return and reside in the United States and thus bear the burdens as well as enjoy the rights and privileges incident to citizenship." (Emphasis by the Court). This opinion was rendered within a reasonably short time after the approval of the Act.

The presumption created by the second paragraph is that the naturalized citizen "has ceased to be (a) * * * citizen," and not that he has expatriated himself. We are of the opinion that if Congress intended that residence in a foreign state for a prescribed period of time would effect the expatriation of a naturalized citizen, this additional condition would have been prescribed in clear and unequivocal language as were the conditions prescribed in the first paragraph.

[11] The failure of the plaintiff to elect United States citizenship after she attained her majority, even though followed by prolonged residence in a foreign state, did not result in her expatriation by operation of law. Mandoli v. Acheson, supra; Pandolfo v. Acheson, 2 Cir., 202 F.2d 38, 41; Acheson v. Maenza, D.C. Cir., 202 F.2d 453, 457, 458. Since there was no duty on the plaintiff to elect between dual citizenship and return to this country within the statutory period, her conduct will not support a presumption that she voluntarily expatriated herself. Ibid.

The defendant urges, however, that in addition to the plaintiff's prolonged residence in a foreign state, she procured a German passport in 1936, while a resident of England. It is argued that this was tantamount to a voluntary renunciation of her United States citizenship. We cannot agree. "The concept of dual citizenship recognizes that a person may have and exercise rights of nationality in two countries and be subject to the responsibilities of both. The mere fact that he asserts the rights of one citizenship does not without more mean that he renounces the other." Kawakita v. United States, supra, 343 U.S. 723 and 724, 72 S.Ct. 956. We think it should be noted further that the plaintiff procured the passport after she had been erroneously advised at the office of the American Consular Service, in 1933, that she had lost her United States citizenship when she acquired derivative German citizenship upon the naturalization of her mother.

### Nationality Act of 1940.

The defendant apparently does not rely on Section 401 of the Nationality Act of 1940, 8 U.S.C.A. § 801,[6] but we have nevertheless considered the rights of the plaintiff in the light of its pertinent provisions, which read as follows:

"A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by:

"(a) Obtaining naturalization in a foreign state, either upon his own application or through the naturalization of a parent having legal custody of such person: * * * : Provided * * *, That a person who has acquired foreign nationality through the naturalization of his parent or parents, and who at the same time is a citizen of the United States, shall, if abroad and he has not heretofore expatriated himself as an American citizen by his own voluntary act, be permitted within two years from the effective date of this chapter to return to the United States and take up permanent residence therein, and it shall be thereafter deemed that he is elected to be an American citizen. Failure on the part of such person to so return and take up permanent residence in the United States during such period *shall be deemed to be a determination on the part of such person to discontinue his status as an American citizen,* and such person shall be forever estopped by such failure from thereafter claiming such American citizenship;". (Emphasis by the Court.)

The proviso is in terms applicable to the plaintiff; it is admitted that she failed to "return and take up permanent residence in the United States" within two years after the effective date of the statute, to wit, January 13, 1941. The statutory estoppel, however, may not be invoked to defeat her present claim to United States citizenship. Podea v. Acheson, 2 Cir., 179 F.2d 306, 308, 309; Perri v. Dulles, 3 Cir., 206 F.2d 586, 590, 591; Hichino Uyeno v. Acheson, D.C., 96 F.Supp. 510, 520; Lee Hong v. Acheson, D.C., 110 F.Supp. 60, 63, 64. The plaintiff made diligent efforts not only to return to this country but also to establish her claim to citizenship prior to the enactment of the Nationality Act of 1940, and subsequent to the enactment and prior to the expiration date, to wit, January 13, 1943. These efforts were thwarted by the Department of State under a mistake of law.

The conduct of the plaintiff while resident in a foreign state evinced an intention to retain her citizenship and return to the United States. She visited the office of the American Consular Service in 1934 to ascertain her status, and thereafter on April 5, 1939, October 11, 1939, and August 1, 1941, applied to the Department of State for a passport. The passport applications were denied under a mistake of law. We are of the opinion that the plaintiff did all that she could have been expected to do under the cir-

---

6. Immigration and Nationality Act, § 349, 8 U.S.C.A. § 1481.

cumstances. (See the cases cited in the preceding paragraph).

### Burden of Proof.

The plaintiff proved that she was a citizen of the United States at and by birth under Section 1993 of the Revised Statutes, supra. The burden was then upon the defendant to prove "by clear, unequivocal and convincing evidence" that she either expatriated herself voluntarily or was expatriated by operation of law. Acheson v. Maenza, supra, 202 F.2d 456; Bauer v. Clark, 7 Cir., 161 F.2d 397, 400, 401; Pandolfo v. Acheson, supra, 202 F.2d 40, 41. The defendant failed to sustain this burden.

### Conclusion.

The plaintiff was a citizen of the United States at and by birth under the express provisions of Section 1993 of the Revised Statutes, supra. There is no evidence that she either voluntarily expatriated herself or was expatriated by operation of law. The plaintiff is therefore a citizen of the United States, notwithstanding her acquisition of derivative German citizenship by the naturalization of her mother under the laws of Germany.