Thelma GARCIA LARANJO,
Plaintiff,

v.

Herbert J. BROWNELL, Jr., as Attorney
General of the United States,
Defendant.

No. 33900.

United States District Court
N. D. California, S. D.

Nov. 10, 1954.

As Amended Nov. 30, 1954.

Fallon & Hargreaves, San Francisco, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for defendant.

OLIVER J. CARTER, District Judge.

Plaintiff seeks a declaration under 8 U.S.C.A. § 1503 that she is a United States national, claiming a denial of her rights and privileges as a national because her application for a certificate of citizenship under Section 341 of the Immigration and Nationality Act has been denied. The pertinent parts of Section 1503 are:

"(a) If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of section 2201 of Title 28, against the head of such department or independent agency for a judgment declaring him to be a national of the United States * * *."

Plaintiff is properly before this Court under Section 1503 since that section permits suit by "any person who is within the United States", and plaintiff is lawfully within the United States.

Plaintiff's application for a certificate of citizenship under Section 341 of the Immigration and Nationality Act was based upon the following facts:

Plaintiff's father, Jose Garcia da Roza, was born in Portugal in 1863. Subsequently he came to the United States and was naturalized as a citizen on March 18, 1886. He returned to Portugal on October 25, 1886, was married there, and plaintiff was born there on June 22, 1914. Plaintiff accompanied her parents to the United States on March 23, 1920, but the family returned to Portugal again in 1927. Therefore plaintiff claims citizenship through her father by virtue of Section 1993 of the Revised Statutes, 10 Stat. 604, which provides that:

"All children heretofore born or hereafter born out of the limits and jurisdiction of the United States, whose fathers were or may be at the time of their birth citizens thereof, are declared to be citizens of the United States * * *."

On April 2, 1931, however, a "Petition to Cancel Certificate of Naturalization" was filed by the United States against plaintiff's father in a United States District Court in Massachusetts, and on April 3, 1931, an order was entered purporting to set aside and vacate the certificate of citizenship of plaintiff's father. Although plaintiff's father was not served with process in the denaturalization proceeding, either personally or by publication, the court based its jurisdiction over the defendant on a "Form of Consent and Waiver" apparently signed by plaintiff's father by mark. Plaintiff attacks the validity of that mode of acquiring jurisdiction on the authority of Stenerman v. Brownell, 9 Cir., 204 F.2d 336, but her application for a certificate of citizenship on the above facts was denied on April 27, 1954, and the denial was affirmed on June 15, 1954, after further appeal within the Immigration and Naturalization Service.

Both parties to the present proceeding have stipulated that plaintiff has exhausted her administrative remedies, and therefore plaintiff brings her claim to citizenship before this Court under 8 U.S.C.A. § 1503.

Defendant has interposed three special defenses; the first defense is that under Section 15 of the Act of June 29, 1906, 34 Stat. 596, the naturalization of plaintiff's father and the issuance to him of a certificate of citizenship were null and void because he returned to the country of his nativity and took permanent residence there within five years after the issuance of the certificate of naturalization. The pertinent part of Section 15 is:

"If any alien who shall have secured a certificate of citizenship un-

der the provisions of this Act shall, within five years after the issuance of such certificate, return to the country of his nativity, or go to any other foreign country, and take permanent residence therein, *it shall be considered prima facie evidence* of a lack of intention on the part of such alien to become a permanent citizen of the United States at the time of filing his application for citizenship, and, in the absence of countervailing evidence, it shall be sufficient *in the proper proceeding* to authorize the cancellation of his certificate of citizenship as fraudulent, and the diplomatic and consular officers of the United States in foreign countries shall from time to time, through the Department of State, furnish the Department of Justice with the names of those within their respective jurisdictions who have such certificates of citizenship and who have taken permanent residence in the country of their nativity, or in any other foreign country, and such statements, duly certified, shall be admissible in evidence in all courts *in proceedings to cancel certificates of citizenship.*" (Emphasis supplied.)

■ A careful reading of the above statute discloses that it merely sets forth a rule of evidence which shall apply in proceedings to cancel certificates of citizenship, and it does not nullify certificates of citizenship of its own force and effect without the special proceeding described in detail in the first paragraph of Section 15 (not quoted). As discussed in more detail in connection with the third defense, this Court holds that the denaturalization decree of the United States District Court in Massachusetts on April 3, 1931, was a nullity. Therefore the first defense is unsound because there has been no valid proceeding under Section 15 of the Act of June 29, 1906, to revoke the citizenship of plaintiff's father.

The second defense is that under Section 2 of the Act of March 2, 1907, 34 Stat. 1228, plaintiff's father had ceased to be an American citizen before plaintiff's birth, apparently on the theory that by residing for two years in the foreign state from which he came, plaintiff's father automatically became an expatriate. Section 2 reads in part:

"When any naturalized citizen shall have resided for two years in the foreign state from which he came, or for five years in any other foreign state *it shall be presumed* that he has ceased to be an American citizen, and the place of his general abode shall be deemed his place of residence during said years * * *." (Emphasis supplied.)

■ Here again a reading of the section indicates an intention to enact a rule of evidence rather than to nullify certificates of citizenship by virtue of the statute alone. This section received careful consideration in Rueff v. Brownell, D.C., 116 F.Supp. 298, 304-305, and in In re Alfonso, D.C., 114 F.Supp. 280, in which the court followed Camardo v. Tillinghast, 1 Cir., 29 F.2d 527, 529; these cases conclude that the presumption of Section 2 can be invoked by the Government only against a naturalized citizen who asserts a claim to diplomatic protection of some sort after residing abroad for the period described in the section. This conclusion was based in part on the opinion of Attorney General Wickersham, 28 Op.Atty.Gen. 504, that:

"The purpose of the Act is, I think, simply to relieve the government of the obligation to protect such citizens residing abroad after the limit of two or five years, as the case may be, * * *."

This Court is in agreement with the following statement of the court in the Rueff case, supra, 116 F.Supp. at page 305:

"We are of the opinion that if Congress intended that residence in a foreign state for a prescribed period of time would effect the expatriation of a naturalized citizen, this additional condition would have

been prescribed in clear and unequivocal language * * *."

Therefore the defendant is in error in its contention that Section 2 effected the expatriation of plaintiff's father without a valid proceeding to cancel his citizenship.

The third defense is that the denaturalization decree of the United States District Court in Massachusetts of April 3, 1931, was valid. The denaturalization proceeding in the United States District Court in Massachusetts was brought under Section 15 of the Act of June 29, 1906, 34 Stat. 596. Section 15 provides:

"In any such proceedings the party holding the certificate of citizenship alleged to have been fraudulently or illegally procured shall have sixty days personal notice in which to make answer to the petition of the United States; and if the holder of such certificate be absent from the United States or from the district in which he last had his residence, such notice shall be given by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the State or the place where such suit is brought."

The law governing service on absent defendants in Massachusetts is found in 7 Mass.Laws Ann., Chapter 227, Proceedings against Absent Defendants and upon Insufficient Service:

"§ 7. Notice.—

"If a defendant in an action in the supreme judicial or superior court is absent from the commonwealth or his residence is unknown to the officer serving the writ, and no personal service has been made on him * * * the court, upon suggestion thereof by the plaintiff, shall order the action to be continued until notice of the action is given in such manner as it may order. * * *"

"§ 8. Default.—

"If, after such notice, the defendant does not appear within twenty-one days after the day specified therefor, a default shall be entered and judgment rendered against him as provided in section one."

In the denaturalization proceeding against plaintiff's father, no personal service was had upon him; the court did not continue the action until notice was given in some other manner; and twenty-one days did not elapse after substituted service, since both parties to the proceeding before this Court have stipulated that a decree was entered in the denaturalization proceeding on the day following the filing of the petition. Therefore no valid service was had upon plaintiff's father in the denaturalization proceeding, and the court had no jurisdiction to render a decree unless it obtained jurisdiction by virtue of the "Form of Consent and Waiver" which apparently was signed by plaintiff's father by mark.

As indicated above this Court is bound by Stenerman v. Brownell, 9 Cir., 204 F.2d 336, in which it was held that a district court could not acquire jurisdiction over the defendant solely by virtue of a consent to judgment and waiver of process signed by the defendant. The consent and waiver in the Stenerman case was very similar to that in the case at bar, and judgment was entered against Stenerman on the day following the filing of the petition just as in the case at bar. The Court of Appeals for the Ninth Circuit held at page 339:

" * * * but service cannot be obtained by short-cutting the statute through a hearsay waiver of notice and consent to a judgment. Since Stenerman had no notice and did not appear in the denaturalization proceeding, the court was wholly without jurisdiction to enter a judgment against him. In contemplation of law his naturalization has been in full force and effect since the Illinois state court granted him citizenship."

Therefore this Court holds that the United States District Court in Massachusetts did not acquire jurisdiction

over plaintiff's father by virtue of the "Form of Consent and Waiver"; that the court was wholly without jurisdiction to enter a judgment against him; that his naturalization was in full force and effect until his death on December 26, 1943.

There is an alternative ground for holding that the citizenship of plaintiff's father was in full force and effect at the time of plaintiff's birth. In Petition of Berger, D.C., 82 F.Supp. 720, the petitioner claimed citizenship derivatively through her husband whose naturalization had been revoked by a consent decree entered on the ground that he had returned to the country of his nativity within five years after his naturalization and established permanent residence there. The court held that since no fraud was proven, the consent to the entry of a decree was the equivalent of a voluntary relinquishment of citizenship which would not void his naturalization ab initio.

Therefore even if the "Form of Consent and Waiver" could be considered to have conferred jurisdiction on the court, the consent decree so entered would not have voided the naturalization of plaintiff's father ab initio under the doctrine of the Berger case.

The last contention of the defendant that requires mention is one made in oral argument. Defendant claims that the decree naturalizing plaintiff's father, entered on March 18, 1886, can be collaterally attacked in the present proceeding.

This contention is made on the premise that evidence is admissible in the present proceeding to show that the certificate of citizenship of plaintiff's deceased father was obtained by fraud, and that the American citizenship of the father at the time of plaintiff's birth, upon which plaintiff must rely to sustain her claim in this action, is null and void. Assuming the validity of such a contention, fraud must be affirmatively pleaded as a defense, Rule 9(c), F.R.C.P., 28 U.S.C., and the defendant is limited to fraud alleged in its amended answer A reading of those portions of the amended answer denominated "First Defense," "Second Defense" and "Third Defense" shows that they are based on the presumptions which flow from the Acts of 1906 and 1907, supra, and the void decree of denaturalization respectively, and not upon any specific fraudulent misrepresentations which go to the jurisdiction of the naturalization court. Therefore the defendant is attempting to litigate in this proceeding claims which could only be adjudicated against plaintiff's father as provided in the respective Acts mentioned. This constitutes a collateral attack on a valid judgment, which cannot be permitted in this proceeding.

From the pleadings and the stipulated facts it is clear that no contested issues of fact remain to be determined on a trial of the general issue and summary judgment should be granted.

It is ordered that plaintiff's motion for summary judgment be granted, and that defendant's motion for summary judgment be denied. Counsel for plaintiff is directed to prepare findings, conclusions and a judgment in accordance herewith.