Matheus Thomas MANHA, Plaintiff,

v.

Herbert BROWNELL, Jr., as Attorney
General of the United States,
Defendant.

Civ. No. 7244.

United States District Court
N. D. California, N. D.

Nov. 19, 1956.

A. M. Frad, Modesto, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for defendant.

HALBERT, District Judge.

Plaintiff was born in 1889 in Portugal, and lawfully entered the United States for permanent residence in 1908. He has remained in this country since his entry. His father, Manuel Faustino Manha, was naturalized as a United States citizen by the Superior Court of the State of California, at San Francisco, on September 12, 1904. If the naturalization of his father was valid, the plaintiff was entitled to the status of a citizen of the United States by virtue of § 5 of the Naturalization Act of March 2, 1907, 34 Stat. 1228.[1] However, on June 30, 1933, the United States District Court for the Northern District of California, Southern Division, entered a final decree revoking and canceling the certificate of naturalization of plaintiff's father, Manuel Faustino Manha, by virtue of a proceeding brought under § 15 of the Naturalization Act of June 29, 1906, 34 Stat. 596.[2] Manuel Faustino Manha was,

1. The pertinent provisions of 34 Stat. Ch. 2534, § 5, p. 1229, are as follows:
  "That a child born without the United States of alien parents shall be deemed a citizen of the United States by virtue of the naturalization of or resumption of American citizenship by the parent: Provided, That such naturalization or resumption takes place during the minority of such child: And provided further, That the citizenship of such minor child shall begin at the time such minor child begins to reside permanently in the United States."

2. The pertinent provisions of 34 Stat. Ch. 3592, § 15, p. 601, are as follows:
  "That it shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and canceling the certificate of citizenship on

at the time of these proceedings, residing in Portugal, made no appearance in the action, and interposed no defense to the revocation and cancellation of his naturalization certificate. No question is raised with respect to the jurisdiction of the court which rendered that decree, and it appears both from the evidence, and the stipulations of the parties in the case at bar, that all the necessary procedural prerequisites in that action were fulfilled.

■ In March of 1955, the plaintiff filed an application for a Certificate of Citizenship with the District Director of Immigration and Naturalization, and in April, 1955, made a personal appearance before an officer of the Immigration and Naturalization Service claiming that he was a citizen and national of the United States. The plaintiff's application was denied. Plaintiff thereupon appealed the decision of the District Director to the acting Regional Commissioner, who, on May 4, 1955, affirmed the decision and order of the District Director. By virtue of such appeal, plaintiff has exhausted all the administrative remedies afforded him.

■ This Court has jurisdiction of this action under and by virtue of § 360 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1503, and 28 U.S. C.A. § 2201, since the plaintiff has been denied a claimed "right or privilege as a national of the United States." This is true notwithstanding the position which the defendant has sought to take in contravention of his own stipulation.

Plaintiff seeks a declaration by this Court:

(1) That he has been a citizen of this country since his entry into the United States on April 19, 1908; and

(2) That the decree revoking his father's certificate of naturalization has no force or effect with respect to his status as a citizen.

[3] The principal issue in this case is whether the 1933 decree rendering the citizenship of the plaintiff's father void *ab initio* could operate to nullify the plaintiff's derivative citizenship as well. The general rule is that there can be no derivative citizenship from a person whose naturalization has been declared void *ab initio*. Rosenberg v. United States, 3 Cir., 60 F.2d 475, cer-

the ground of fraud or on the ground that such certificate of citizenship was illegally procured. In any such proceedings the party holding the certificate of citizenship alleged to have been fraudulently or illegally procured shall have sixty days personal notice in which to make answer to the petition of the United States; and if the holder of such certificate be absent from the United States or from the district in which he last had his residence, such notice shall be given by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the State or the place where such suit is brought.

"If any alien who shall have secured a certificate of citizenship under the provisions of this Act shall, within five years after the issuance of such certificate, return to the country of his nativity, or go to any other foreign country, and take permanent residence therein, it shall be considered *prima facie* evidence of a lack of intention on the part of such alien to become a permanent citizen of the United States at the time of filing his ap-

plication for citizenship, and, in the absence of countervailing evidence, it shall be sufficient in the proper proceeding to authorize the cancellation of his certificate of citizenship as fraudulent, and the diplomatic and consular officers of the United States in foreign countries shall from time to time, through the Department of State, furnish the Department of Justice with the names of those within their respective jurisdictions who have such certificates of citizenship and who have taken permanent residence in the country of their nativity, or in any other foreign country, and such statements, duly certified, shall be admissible in evidence in all courts in proceedings to cancel certificates of citizenship.

\* \* \* \* \*

"The provisions of this section shall apply not only to certificates of citizenship issued under the provisions of this Act, but to all certificates of citizenship which may have been issued heretofore by any court exercising jurisdiction in naturalization proceedings under prior laws."

tiorari denied 287 U.S. 645, 53 S.Ct. 91, 77 L.Ed. 558; United States ex rel. Harrington v. Schlotfeldt, 7 Cir., 136 F.2d 935, certiorari denied in Krause v. United States, 327 U.S. 781, 66 S.Ct. 680, 90 L.Ed. 1008. Plaintiff contends that derivative citizenship is not affected by the denaturalization of the person from whom it is derived where (1) the decree of denaturalization is based on presumptive fraud as distinguished from actual fraud, and (2) where the decree is not supported by substantial evidence.

The record shows that plaintiff's father returned to Portugal only one month after he became a naturalized citizen of the United States. Under the terms of § 15 of the Nationality Act of 1906, a fraudulent intent in the procurement of naturalization papers may be presumed from the fact of departure by the naturalized person within five years from the date on which he was naturalized. Plaintiff's first contention is that a decree of denaturalization based on this presumption cannot affect his derivative citizenship. In support of this position plaintiff urges this Court to follow the holdings in In re Findan, D.C., 4 F.Supp. 189, and In re Bolter, D.C., 66 F.Supp. 566, in its construction of § 338(d) of the Nationality Act of 1940, 8 U.S.C. § 738(d), as that section read in 1942. The Findan case held in no uncertain terms that derivative citizenship cannot be affected by a denaturalization decree based on presumptive fraud, and the Bolter case reached a similar conclusion on the basis of the language of § 338(d), holding that it was merely declaratory of the law as it then existed and did not purport to change the law. The provisions of § 338(d) (8 U.S.C.A. § 1451 (e) as it read in 1953), which are of concern in the case now before me, read as follows:

"The revocation and setting aside of the order admitting any person to citizenship and canceling his cer-

tificate of naturalization under the provisions of subsection (a) of section 338 of the Nationality Act of 1940 shall not, *where such action takes place after the effective date of this chapter,* result in the loss of citizenship or any right or privilege of citizenship which would have been derived by or been available to a wife or minor child of the naturalized person had such naturalization not been revoked: *Provided,* That this subsection shall not apply in any case in which the revocation and setting aside of the order was the result of actual fraud * * *." [3] (Emphasis added.)

I might be persuaded by the Findan and Bolter cases, supra, were it not for: (1) the long standing rule established by the case of Luria v. United States, 231 U.S. 9, 34 S.Ct. 10, 58 L.Ed. 101; (2) the express language of § 338 (d), cited supra; and (3) the authority of Battaglino v. Marshall, 2 Cir., 172 F.2d 979, certiorari denied in 338 U.S. 829, 70 S.Ct. 56, 94 L.Ed. 504. In the Luria case the Supreme Court upheld the constitutionality of § 15 of the 1906 Act, and declared that the presumptions of fraud which Congress designated as having evidentiary value in denaturalization proceedings were sufficient to give rise to a decree having the same force and effect as one based on an actual showing of fraud. Such being the case, I am not at liberty to create a distinction which the Supreme Court has expressly declared does not exist. To say that a pre-1940 denaturalization decree supported by evidence flowing from rebuttable presumptions cannot have the effect of annulling derivative citizenship is tantamount to a declaration that such a decree does not render the denaturalized person's citizenship void *ab initio.* Sympathetic as I may be with the plaintiff's plight, I am not warranted in affording him an escape hatch which has been long since closed by the Supreme Court.

3. The earliest possible date on which the policy declared by this section became effective would be ninety days after October 14, 1940. See 8 U.S.C.A., § 906, as it read in 1942, and § 407 of the Nationality Act of 1952, 8 U.S.C.A. § 1101 note.

In 1940, Congress obviously was aware of the effect on derivative citizenship, which resulted from a denaturalization decree rendered under § 15 of the 1906 Act. The change in policy, as embodied in § 338(d) of the 1940 Act, was directed at the preservation of derivative citizenship even though a parent's or husband's citizenship had been revoked and cancelled *ab initio*, excepting, however, those cases where such revocation and cancellation is based on actual fraud. Notwithstanding this revision of the law which Congress made, it is perfectly clear in § 338(d) that the policy change promulgated applied only to denaturalization decrees "*after the effective date of this chapter.*" What the Bolter case [66 F.Supp. 568] apparently overlooks, when it declares that these words were added only "out of an obvious abundance of caution," is · that there was no room for such an interpretation of policy under the 1906 Act as construed by the Supreme Court in Luria v. United States, supra, and the Third Circuit in Rosenberg v. United States, supra. Judge Chase of the Second Circuit, in reply to a position identical to that sought to be taken by the plaintiff in this case, said in Battaglino v. Marshall, supra,[4] 172 F.2d at page 981:

> "Indeed, as the case just mentioned shows, [i. e., Luria v. United States] the distinction between what is called presumptive fraud and actual fraud is but a difference in the manner of proof to establish the fact that the applicant for citizenship did not intend 'to become a permanent citizen of the United States at the time of filing his application for citizenship'. * * * The fraud consisted in the false representation that he intended to become a permanent citizen and its effect was the same however proved. It made the naturalization void and the certificate a nullity ab initio.

"Congress did, in the Nationality Act of 1940, soften the effect *prospectively* of cancellations of certificates of citizenship upon those claiming derivatively under them. Since the effective date of that Act, it is true that by virtue of Section 338(d), 8 U.S.C.A. § 738(d), cancellation for what is called presumptive fraud does not ' * * * result in the loss of citizenship or any right or privilege of citizenship which would have been derived by or available to a wife or · minor child of the naturalized person had such naturalization not been revoked, but the citizenship and any such right or privilege of such wife· or minor child shall be deemed valid· to the extent that it shall not be affected by such revocation: * * *.' But that came too late to be of any aid to this appellee. Its only significance, if it has any at all, would be to emphasize that the law controlling this appeal was thereby changed." (Emphasis added.)

Moreover, to adopt the plaintiff's interpretation of the 1940 Act would, in essence, be to read into the Act a construction which Congress has expressly negated. This Court is firmly committed to the proposition that where the language of a statute "expresses an intention reasonably intelligible and plain, it must be accepted without modification by resort to construction or conjecture." See In re Shear, D.C., 139 F.Supp. 217, 221, and cases cited therein.

Plaintiff's second contention is based on the theory that the rebuttable presumptions flowing from the affidavits attached to the government's petition in the default denaturalization proceedings in 1933 against plaintiff's father did not constitute substantial evidence of the government's charges, and hence the decree rendered in that proceeding must be vacated so far as it affects the plaintiff's

---

4. In Battaglino v. Marshall the plaintiff had sought a passport, been denied a certificate of citizenship, and made the assertion that his derivative citizenship had not been nullified by a default decree denaturalizing his father based on presumptive fraud under § 15 of the Nationality Act of 1906.

(son) status as a derivative citizen. While it is true that a denaturalization decree taken by default may be set aside for lack of jurisdiction through improper service, Laranjo v. Brownell, D.C., 126 F.Supp. 370, and that a default decree based only on a consent and waiver by the absent defendant cannot operate to nullify his citizenship *ab initio*, because such a consent and waiver is in the nature of a voluntary relinquishment of citizenship and is not evidence of fraud, Laranjo v. Brownell, supra, and Petition of Berger, D.C., 82 F.Supp. 720, the plaintiff in the case at bar does not question the jurisdiction of the District Court in the 1933 proceedings, and it appears from the record that no consent and waiver was ever signed by plaintiff's father in that case. It is also true that where sufficient facts are shown, the delay in attacking a decree may be excused under Rule 60(b) of the Rules of Civil Procedure, 28 U.S.C.A., and in a proper case a default denaturalization decree may be reopened to afford the defendant an opportunity to counter whatever evidence the government may have. See Klapprott v. United States, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266.[5] Plaintiff in the instant case has nowhere contended that he is entitled to avail himself of the provisions of Rule 60(b), and even if the facts of this case were sufficient to justify the invocation of that rule, it cannot be said that the government in the 1933 proceeding against his father failed to sustain its burden of proof on the issue of fraud. True, the evidence in that proceeding consisted entirely of presumptions, but Congress had, in § 15 of the 1906 Act, expressly given those presumptions the force and weight of evidence. Whatever attack may be made on the logic which compelled Congress to presume fraud from one's departure within five years after he had become naturalized, I can conceive of no theory which would permit me to question it, short of a constitutional objection, and this latter objection has been laid to rest since 1913 by Luria v. United States, supra. The adequacy of the type of proceeding employed by the government in the 1933 case against plaintiff's father [6] has more recently been upheld by the courts. See Zurini v. United States, 8 Cir., 189 F.2d 722. Hence, it is the conclusion of this Court that the plaintiff's second contention, like his first, must fall from the lack of an adequate legal foundation.

It is extremely unfortunate that one who for some 48 years has exemplified the highest standards of citizenship should one day abruptly discover that the privileges which he so justly deserves are not his. But it is in these situations that the greatest judicial self-restraint is called for, lest we overlook the far weightier policy which separates the legislative from the judicial function.

It is hereby ordered that judgment be entered in favor of the defendant.

---

5. Although the Supreme Court split four ways in this case, the principle was clearly established that the government is not relieved of its obligation to present substantial evidence in support of its allegations by the mere fact that the proceedings are taken by default.

6. The procedure consisted of the following steps:

(1) Affidavit of the Deputy Commissioner of Naturalization showing good cause for the cancellation of citizenship;

(2) Filing of a bill of complaint by the United States Attorney in the District Court in the District of last residence of the alien;

(3) Service by publication under the applicable state law providing for service on absentees;

(4) Affidavit of permanent residence abroad by the alien within five years after such alien had become naturalized in this country furnished by the Department of State;

(5) Lapse of the sixty day period afforded the alien in which to make answer;

(6) Entry of the Bill of Complaint pro confesso upon order of the Clerk;

(7) Lapse of 30 days from the entry of such order affording the alien the opportunity to move to have it set aside;

(8) Entry of final decree nullifying said alien's citizenship ab initio.