**In re FINDAN (Naturalization No. 31560).**

District Court, D. Rhode Island.

July 25, 1933.

Henry Nicolls, District Director of Naturalization, of Boston, Mass., for the United States.

Aram A. Arabian and George K. Demopulos, both of Providence, R. I., for John and Costa Koufoudakis.

LETTS, District Judge.

There is before the court the petition for naturalization of Maria Findan, a native of Glasgow. The petition was regularly filed and contains the usual and sufficient allegations as to eligibility for citizenship.

To the granting of this petition, the government has interposed objection on the ground that the two persons presented as witnesses are not citizens of the United States, as required by the statute. It is conceded that the petitioner has met all other requirements and may be properly granted citizenship, provided the two witnesses, John Koufoudakis and Costa Koufoudakis are themselves citizens. The facts relating to their status are as follows:

Stelios Koufoudakis, father of John and Costa, while unmarried, was naturalized in New York City on February 6, 1893. Thereafter, and within five years of his naturaliza-

tion, in the course of his occupation or employment, he went abroad and did not again return to the United States. The record does not disclose the country to which his occupation, upon leaving the United States, first took him. It does, however, disclose that after leaving the United States he married. From that marriage were born two children in Smyrna, Asia Minor; John in 1900, and Costa in 1903. Both sons, before attaining the age of eighteen, were taken by their parent before the United States Consul at Smyrna and registered as children of a citizen of the United States. Both obtained identification certificates and took the oath of allegiance to the United States.

In December, 1919, John obtained an American passport and came to the United States, where he has since continuously resided. Since attaining his majority on January 5, 1921, he has exercised his franchise as a citizen by voting in this country and has on several occasions served, without challenge, as a witness on other petitions for naturalization.

Costa came to the United States on an American passport in January, 1921, and has since continuously resided here. He, too, has exercised all the privileges of citizenship, both by voting and appearing as a witness in proceedings necessitating a recognition and acceptance of his status as a citizen.

On January 27, 1930, upon a petition filed by the United States, the earlier decree admitting the father, Stelios Koufoudakis, to citizenship was set aside by the entry of a pro confesso decree. It appears that no personal service of the petition, leading to the entry of this decree, was ever made upon the father. The statutory requirements of substituted service were, however, fulfilled. No notice of any kind of the pendency of the petition, affecting the citizenship status of the father, was ever had by John or Costa. Shortly after the entry of the decree of cancellation, to wit, on March 5, 1930, the father, while abroad, died.

It is agreed that there is no evidence of any actual fraud on the part of the father as of the time his declaration of intention to reside in the United States was presented and his petition granted. The cancellation was predicated solely upon the inference of fraudulent representation permissive under the statute in the absence of countervailing evidence where a party returns to the country of his nativity, or any other foreign country, and takes up permanent residence there within the period of five years. The record is

silent as to what time **prior to** the entry of the decree of cancellation the father in fact arrived at a fixed intent not to return to the United States.

The question then is, upon the facts as stated: Did the decree of cancellation entered in January of 1930 effect a cancellation of the derivative citizenship of the two sons who up to that time, and from the day of their birth, had been and would be accepted as citizens of the United States by all governmental authorities? In my opinion, the decree did not effect any such result. To so interpret the intendment of the naturalization statutes would lead to confusing, harsh, and inequitable results in respect to the status of many persons. It would result in depriving individuals of the valuable and established status of citizenship without fault on their part and without any notice or opportunity to present countervailing evidence in support of the status of him or her from whom their citizenship was derived.

If the parent at the time of obtaining his citizenship had resorted to actual fraud in respect to facts essential under the law for the support of his petition, the proceeding might then be regarded as a nullity from the beginning and the conclusion reached that no one could derive rights as a result of such fraudulent acts. In this case, however, wherein it is agreed that there is no evidence of actual fraud, every equitable consideration should prompt that interpretation of the law which will avoid a harsh and unreasonable application. Modern jurisprudence is concerned, not only with legalistic logic, but also with just and practical results.

The only authority cited by counsel for the government in support of its contention is an opinion given by former Attorney General William D. Mitchell to the Secretary of Labor in July, 1931, relative to the status of the wife and child of one Pietro Mariani. 36 Opinions of the Attorneys General, at page 446. The facts dealt with in that opinion, however, differ from those here presented. Mariani, a native of Italy, had been naturalized in 1919. Within five years he returned to Italy and there married, having a child born to him in 1923. Because of his long absence, his citizenship was canceled by decree of the United States District Court for the District of Oregon in August, 1925. In 1926 Mariani returned to the United States as an alien and upon a new petition was again naturalized in 1929. He then sought to bring his wife and child to the United States as nonquota immigrants, contending that they derived American citizenship by virtue of his first naturalization in 1919. The Attorney General advised the Secretary of Labor that the mother and child were not citizens. It will be noted in these facts, however, that at no time had the mother and child ever lived in the United States and at no time had they been granted a United States passport or been recognized as citizens or exercised any of the prerogatives of citizenship. To them the result reached by the conclusion of the Attorney General worked no hardship and, if limited to the facts and circumstances thereby dealt with, established no precedent disturbing or casting a cloud upon the status of individuals resident here and enjoying the security and privileges of American citizenship.

I must overrule the objection raised by the government and find that both John and Costa Koufoudakis are American citizens and qualified under the law to appear as witnesses in support of the petition of Maria Findan, whose petition is hereby granted.