**SANDERS v. CLARK et al.**

**Civ. A. No. 7744.**

District Court, E. D. Pennsylvania.
March 10, 1948.

T. Henry Walnut, of Philadelphia, Pa., for plaintiff.

Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., for defendants.

McGRANERY, District Judge.

This case is before the court on a motion to dismiss the complaint. Plaintiff is seeking a declaratory judgment as to his nationality status, in pursuance of Section 503 of the Nationality Act of 1940, 8 U.S.C.A. § 903. He alleges that he is a citizen of the United States and prays for a judgment which, inter alia, will so declare. The controversy is an outgrowth of a previous denaturalization proceeding, involving plaintiff's father. Briefly, the facts are these.

Plaintiff was born in Hamburg, Germany in 1913, of German parents. In 1921, plaintiff's father filed a petition for naturalization in the Federal District Court for Puerto Rico and was admitted as a citizen of the United States on July 29, 1922. Plaintiff remained in Germany until he was seventeen, at which time he joined his father in Puerto Rico. He was admitted for permanent residence as a nonquota immigrant. By virtue of 8 U.S.C.A. § 714, plaintiff thus became a citizen. In 1942, the government commenced a denaturalization proceeding in Puerto Rico against plaintiff's father. The complaint alleged that the father had secured his certificate of naturalization illegally and fraudulently in that he was not attached to the principles of the Constitution of the United States and well disposed to the good order thereof at the time the certificate was issued, and in that he did not then intend to support and bear true faith and allegiance to the same. A bill of particulars was filed and plaintiff's father then filed his answer, denying that he had been guilty of fraud in securing his naturalization, and averring that his oath of allegiance was taken in good faith. On the day fixed for the hearing, plaintiff's father filed an instrument in writing signed by his attorneys and approved by him which stated the following: "Now, comes George Sanders, respondent herein by his undersigned attorneys and consents that judgment be entered against him in accordance with the prayer of the Bill of Complaint." The court thereupon entered a decree against the defendant, stating, inter alia, "The allegations of the bill of complaint and of the bill of particulars are, without a doubt, sufficient. The respondent consents that judgment be entered against him as prayed for. Nothing remains for the Court to do but to enter judgment."

On December 3, 1946, plaintiff filed with the Commissioner of Immigration and Naturalization an application for a certificate of derivative citizenship under 8 U.S.C.A. § 739. This application was denied on the ground that the revocation of plaintiff's father's naturalization for actual fraud resulted in plaintiff's loss of American citizenship. Section 338(d) of the Nationality Act of 1940, which was in effect when plaintiff's father's citizenship was revoked, provided, 8 U.S.C.A. § 738(d): "The revocation and setting aside of the order admitting any person to citizenship and canceling his certificate of naturalization un-

·der the provisions of subsection (a) of section 738 shall not, where such action takes place after the effective date of this chapter, result in the loss of citizenship or any right or privilege of citizenship which would have been derived by or available to a wife or minor child of the naturalized person had such naturalization not been revoked, but the citizenship and any such right or privilege of such wife or minor child shall be deemed valid to the extent that it shall not be affected by such revocation: Provided, That this subsection shall not apply *in any case where the revocation and setting aside of the order was the result of actual fraud."* (Emphasis supplied.)

In the meantime, deportation proceedings had been instituted against plaintiff, charging that he was an alien unlawfully in the United States. These proceedings culminated in an order of deportation, entered by the Commissioner of Immigration and Naturalization on September 2, 1947. The plaintiff has not yet been taken into custody under this order.

In his complaint, plaintiff seeks a declaration of his citizenship and an injunction against the pending deportation proceedings. The government has moved to dismiss the complaint on the ground that it fails to state a claim upon which relief can be granted, alleging that the plaintiff cannot collaterally attack the denaturalization decree, that it rested upon "actual fraud", and that in any event no injunctive relief can be granted.

The issue as to the effect of the prior judgment against plaintiff's father is a difficult one because it poses the legality of a harsh result. Judicial interpretation of the denaturalization statute has provided, in effect, that· plaintiff can be divested of his citizenship without ever having a chance at an effective day in court. The first statute providing for the revocation of naturalization contained no provision as to the effect of cancellation upon the derivative citizenship of a defendant's wife or child. 34 Stat. 601, 8 U.S.C.A. § 405. However, some of the earlier cancellation cases based upon the ground of· fraud intimated that a cancellation proceeding simply deprived the naturalized person of a privilege that was never rightfully his. Johannessen v. Unit-

ed States, 225 U.S. 227, 32 S.Ct. 613, 56 L. Ed. 1066; Luria v. United States, 231 U.S. 9, 34 S.Ct. 10, 58 L.Ed. 101. Subsequent cases reasoned that since no rights were conferred on the denaturalized person by the fraudulent naturalization, no rights could be derived by his wife or child. Cf. Rosenberg v. United States, 3 Cir., 60 F.2d 475; see In re Findan, D.C., 4 F.Supp. 189, 190. This derivative reasoning received Congressional sanction in the Nationality Act of 1940, 8 U.S.C.A. § 501 et seq. Cf. United States v. Orth, D.C., 51 F.Supp. 682. However, it was also held that in the denaturalization proceeding, these derivative citizens need not be parties. Thus, in Rosenberg v. United States, 3 Cir., 60 F.2d 475, certiorari denied 287 U.S. 645, 53 S.Ct. 91, 77 L.Ed. 558, a wife who claimed derivative citizenship petitioned to intervene in a denaturalization proceeding against her husband. The petition was denied. And United States ex rel. Harrington v. Schlotfeldt, 7 Cir., 136 F.2d 935, certiorari denied Krause v. United States, 327 U.S. 781, 66 S.Ct. 680, 90 L.Ed. 1008, affirmed the action of a trial court in denying an application for the appointment of a guardian ad litem to protect the interests of defendant's three year old son. Under the reasoning· of those cases, therefore, the derivative citizenship of a child or wife may be effectively cancelled without a chance to contest it, if a prior denaturalization decree has conclusive effect. Moreover, it seems at least implicit in the opinions dealing with the problem that this is so, i. e., that the former judgment binds the wife or child, if the issue of actual fraud was there decided. Cf. In re Findan, D.C., 4 F.Supp. 189; In re Bolter, D.C., 66 F.Supp. 566.

Whether this view is correct is, at least, open to doubt. A naturalization proceeding is a determination of status, similar, for example, in this respect to an adjudication of majority, sanity, marriage or divorce. See Freeman, Judgments, Sec. 1534. A denaturalization proceeding is the reverse side of the shield. There is a difference of opinion as to what a judgment settling a status decides, beyond the fact of status itself; i. e., whether the facts upon which the judgment of status rests are established as against those not parties to the

suit. Thus, the Restatement of Judgment, Section 74, c, provides: "Although a valid judgment in rem is binding on all the world as to the existence of a status which is the subject of the action, it is not conclusive as to a fact upon which the judgment is based in any subsequent action (not involving the existence of the status), except as to persons who have appeared and actually litigated the question of the existence of the fact." But a different formulation is not difficult to locate. See Freeman, Section 15. There is no question, I feel, that plaintiff's father's status was changed in the former proceeding from citizen to alien, and that plaintiff is bound by that insofar as it affects him. But the crucial issue in this case is whether the facts which would justify a legal conclusion of actual fraud were also established in that case, and whether plaintiff is bound by that as well. Where a fact is important to the outcome of an action and that fact was involved in a former adjudication of status, precedent can be found to support any of three different positions: that the former judgment is of no evidence (Cf. Stricker v. Scott, 283 Mass. 12, 186 N.E. 45); that it is of some evidence (Cf. Messinger v. Prudential Ins. Co., Sup., 32 N.Y.S.2d 48; In re Cole's Estate, 75 Colo. 264, 226 P. 143) and that it is conclusive (State v. McDonald, 108 Wis. 8, 84 N.W. 171, 81 Am.St.Rep. 878) in the subsequent proceedings as to the existence of the fact. Of these three views, the second seems preferable to me. It neither unduly extends principles of res judicata nor discards evidence of obvious probative value.

Moreover, the facts of the instant case, suggest further reasons for following the middle course. The right upon which plaintiff seeks a judicial declaration is a very dear one today. Accepting as true the facts as alleged in the complaint in the former denaturalization proceeding might in effect destroy plaintiff's citizenship. It is true, of course, that the merits or equities of plaintiff's case are actually irrelevant, and that short of taking the view that derivative denaturalization is unconstitutional (see Knauer v. United States, 328 U. S. 654, 679, 66 S.Ct. 1304, 90 L.Ed. 1500) his right to citizenship stands or falls with his father's, where the latter was guilty of actual fraud in obtaining his certificate. But the effect of a rule should not be ignored, especially so when the proceeding in which it is to be used involves grave issues. Moreover, the judgment which the government seeks to invoke as a bar in this proceeding was entered upon the consent of the parties. Nothing was there actually litigated; no evidence was produced. While there is no doubt that the status itself was established, within the confines of allowable collateral attack, it is going far indeed to attribute conclusiveness to the facts which the government was urging as ground for revocation of citizenship. Upon the facts of this case, there is some doubt in my mind whether even the father would be precluded by principles of res judicata from relitigating the issue of fraud as distinguished from the issue of status in some other cause of action between the same parties.

It may well be that the proper way to handle this situation is to afford a child or spouse representation in the prior denaturalization proceeding. Certainly, where for reasons of malice or ineptitude, the father would not defend his naturalization against government attack to the best of his ability, this procedure might be justified. But in the absence of such protection it seems a harsh result to deny a person a chance to participate and then bind him conclusively by the result, where the effect may be to deprive him of citizenship. Accordingly, therefore, I shall deny the government's motion to dismiss. The government's contention that plaintiff, in any event, would not be entitled to injunctive relief would seem to fall under the recent decision of the Circuit Court of Appeals, United States ex rel. Trinler v. Carusi, 3 Cir., 166 F.2d 457.