**SANDERS v. CLARK, Attorney General, et al.**

Civ. A. No. 7744.

United States District Court
E. D. Pennsylvania.

Aug. 9, 1949.

T. Henry Walnut, Philadelphia, Pa., for the plaintiff.

Gerald A. Gleeson, United States Attorney, James P. McCormick, Assistant United States Attorney, Philadelphia, Pa., for the defendants.

FOLLMER, District Judge.

Plaintiff herein filed a bill of complaint asking,—

1. That a preliminary injunction be issued and made permanent after hearing, enjoining the defendant Watson K. Miller, Commissioner of Immigration and Naturalization, his deputies, agents or subordinates, and Karl I. Zimmerman, District Director for District No. 2 at Philadelphia, from prosecuting any proceeding for the removal or deportation of the said Hans Hermann Sanders from the United States, or from otherwise interfering with him or molesting him.

2. That a declaratory judgment be entered declaring Hans Hermann Sanders, the plaintiff above named, to be a citizen of the United States entitled to all the rights and privileges of such citizenship.

Defendants moved to dismiss the complaint on the ground that it fails to state a claim against defendants upon which relief can be granted. That motion came on for argument before, and was dismissed by Judge McGranery in a very carefully considered and thoroughly logical and convincing opinion[1] in which the facts of the case were fully set forth, and all of which I herein adopt.

Subsequently plaintiff moved for summary judgment. This motion came on for argument before, and was dismissed by Judge Gancy in an unreported opinion[2]

---

[1] Sanders v. Clark et al., D.C.E.D.Pa., 76 F.Supp. 489.

[2] No opinion for publication.

dated August 16, 1948. The court here, after quoting from the Nationality Act of 1940, § 338(d), 8 U.S.C.A. § 738(d) held: "Accordingly on the pleadings it seems apparent that by these averments and their denial, the court cannot say as a matter of law that 'actual fraud' does not obtain, but recourse should be had to factual proof in order that the court may determine the type and quantity of the fraud allegedly involved in order to make a proper determination under the Act."

Paragraph 5 of the complaint avers as follows:

"Upon motion for a Bill of Particulars filed July 7, 1942, Petitioner in said proceedings filed in answer thereto as its allegations in support of the charge of fraud the following:

"'Bill of Particulars

"'1. He, the respondent, became an American citizen solely for the purpose of social and business convenience.

"'2. He, the respondent, continued to maintain his allegiance to Germany, his former country, in that,

"'(a) Respondent continued to identify himself and the members of his family as Germans;

"'(b) Respondent desired and still desires to repatriate himself as a German and to reacquire his former German citizenship

"'(c) Respondent assisted his son in reacquiring German citizenship.

"'(d) Respondent has on many occasions shown by his statements and by his actions his attachment to the German state, to Adolph (sic) Hitler, and to the principles of Naxism (sic) and Fascism;

"'(e) Respondent has expressed his desire for a speedy Germany victory in the current war.'"

Supplementing the facts set forth in the opinion of Judge McGranery above referred to, from the trial of the case before me, I make the following additional

### Findings of Fact

1. George Sanders was born in Germany the 3d day of February, 1871, of native German parents. In 1892 he became a merchant engaged in importing and exporting in the town of Aguadilla, Puerto Rico. In 1906 he returned to Germany and for two years thereafter carried on his business with his brother in London, England, during which time he was married to a woman who was a native of Germany. In 1913, shortly after the birth of his second son, Hans Hermann Sanders, the plaintiff in this case, he, the father, returned to Aguadilla, Puerto Rico, where he has since that time continued to reside and to carry on his export and import business.

2. As of July 29, 1922, George Sanders became a citizen of the United States by Certificate of Naturalization No. 818533.

3. The plaintiff, Hans Hermann Sanders, then seventeen years of age, became a citizen of the United States upon his becoming a resident of Puerto Rico, April 6, 1930.

4. The record of the proceedings in the case of United States v. George Sanders consisted of a "Bill to Cancel Naturalization," which alleged in effect that George Sanders had committed fraud in securing his citizenship in that he retained his allegiance to Germany when he swore allegiance to the United States; a bill of particulars wherein appeared the specific grounds upon which the United States relied to support its charge of fraud, and an answer filed by George Sanders denying the charges made against him and specifically alleging that he took his oath of allegiance in good faith.

5. George Sanders made occasional vacation trips to Germany, usually lasting for two or three months. In more recent years the trips occurred once every two years and one lasted for eight months.

6. The eldest son of George Sanders is a resident and citizen of Germany.

7. For a number of years, during his residence in Puerto Rico, George Sanders was an honorary German vice-consul.

8. George Sanders did not become an American citizen solely for the purpose of social and business convenience.

9. In twenty-three years of business activity in Puerto Rico, George Sanders became fully acquainted with the Ameri-

can form of government and sincerely desired to become an American citizen.

10. George Sanders and his wife are both ethnologically of pure German descent.

11. George Sanders and his wife both had relatives living in Germany.

12. George Sanders and his wife both retained their love for German music.

13. Neither George Sanders, his eldest son in Germany, nor the plaintiff, at any time belonged to the Nazi party.

14. Other than to maintain contact with close relatives, and to acknowledge their love for German music, George Sanders did not continue to identify himself and members of his family as Germans.

15. George Sanders did not desire in 1922, nor did he in 1942 desire, to repatriate himself as a German and to reacquire his former German citizenship.

16. In his capacity as honorary German vice-consul, George Sanders in 1935 forwarded the application of his eldest son for German citizenship to the German Consul General, together with a letter stating, inter alia, "I can, to the best of my knowledge, recommend the reinstatement of my son as a citizen completely. He is in his national views, convictions and sentiments a pure German, and moreover a convinced follower of our Fuehrer and Reichschancellor Adolf Hitler. I am convinced that my son now, and especially later as an independent merchant who hopes to be in Columbia where he plans to go soon, where he will continue to serve the best interests of Germany according to his powers, and hold the love of the Fatherland."

17. George Sanders did in some correspondence, all after 1922 and before the entry of the United States into the war, as honorary German vice-consul, use the expression "Heil Hitler", which he states was merely a salutation.

18. George Sanders did not, with the exception of the letter in connection with his eldest son's German citizenship, express any sentiment that might be construed as indicating an allegiance to the German State and that letter was written in 1935.

19. George Sanders did express a desire for a speedy German victory before the United States entered the war.

20. George Sanders was 72 years of age when he signed the consent to the entry of judgment on which the order of August 11, 1942, revoking his naturalization and cancelling the certificate was predicated.

21. At the time of the entry of the decree of denaturalization the temper of the entire country was strongly anti-German. Due to this war psychosis, and at his advanced age, George Sanders, in an effort to avoid publicity and the penalties that would in all probability follow an adverse decision, signed the consent.

22. George Sanders bore a splendid reputation in Puerto Rico as a loyal citizen of the United States.

### Discussion.

The government contends that the naturalization of George Sanders was cancelled for actual fraud which consisted of his retention of a mental reservation of allegiance to Germany, that it must therefore be regarded as a nullity from the beginning with the resultant conclusion that this son, the plaintiff herein, derived no rights from his father's naturalization because of such fraud.

In the opinion above referred to, Judge McGranery held [76 F.Supp. 492], inter alia, "There is no question, I feel, that plaintiff's father's status was changed in the former proceeding from citizen to alien and that plaintiff is bound by that insofar as it affects him. But the crucial issue in this case is whether the facts which would justify a legal conclusion of actual fraud were also established in that case, and whether plaintiff is bound by that as well. * * *"

The stricture imposed by the Nationality Act of 1940 on the scope of a revocation of citizenship in its effect on citizenship derived therefrom by a wife or minor child is all inclusive with this single exception. "Provided, That this subsection shall not apply in any case where the re-

vocation and setting aside of the order was the result of actual fraud."[3]

Unquestionably the courts in cases arising out of both wars recognized that the fraud of which they found defendants guilty and upon which the order of denaturalization was based was not necessarily "actual fraud" but could be "legal fraud";[4] "constructive" or "implied fraud."[5] Consequently, "constructive fraud" was sufficient to sustain the entry of a decree against George Sanders.

A review of the testimony relating to actual fraud discloses that none of the alleged expressions of interest in Germany or its political regime relied upon by the government were related in any way to the date of the subject's naturalization. So far as may be ascertained from the record, the date of the earliest expressions was twelve or thirteen years after naturalization; not one of them were made after the date when the United States entered the war.

In Schneiderman v. United States, 1943, 320 U.S. 118, 63 S.Ct. 1333, 1336, 87 L.Ed. 1796, the court held that in a case of this sort to set aside citizenship "the evidence must be 'clear, unequivocal, and convincing'—'it cannot be done upon a bare preponderance of evidence which leaves the issue in doubt.'" Later in Baumgartner v. United States, 1944, 322 U.S. 665, 64 S. Ct. 1240, 1244, 88 L.Ed. 1525, the court held that the offending statements of the German defendants, which began three years before the date of naturalization and continued afterward, did not meet the requirement of "'clear, unequivocal, and convincing' proof." In a concurring opinion, Justice Murphy stated, "With one unimportant exception, the Government proved only that petitioner displayed certain Nazi sympathies and was critical of the United States several years after 1932. *There was no competent evidence that he entertained these strong beliefs or that he had any mental reservations in forswear-*ing his allegiance to the Weimar Republic in 1932." (The date of his naturalization.) (Emphasis supplied.)

In Klapprott v. United States, 1949, 335 U.S. 601, 69 S.Ct. 384, 389, 93 L.Ed. —, the court points out, "This Court has long recognized the plain fact that to deprive a person of his American citizenship is an extraordinarily severe penalty. The consequences of such a deprivation may even rest heavily upon his children"; and with reference to the burden of proof imposed upon the Government by the rule laid down in the Schneiderman case, supra, "* * * is substantially identical with that required in criminal cases—proof beyond a reasonable doubt. * * * it is our opinion that courts should not in § 738 proceedings deprive a person of his citizenship until the Government first offers proof of its charges sufficient to satisfy the burden imposed on it, even in cases where the defendant has made default in appearance."

### Conclusions of Law

1. Hans Hermann Sanders became a citizen of the United States April 6, 1930, his status as such being derived from the order naturalizing his father, George Sanders, entered by the United States District Court of Puerto Rico under date of July 29, 1922.

2. The order of the United States District Court for Puerto Rico entered under date of August 11, 1942, in the proceedings captioned United States of America v. George Sanders, No. 2679, Civil,[6] revoking and setting aside the order naturalizing George Sanders was not entered as the result of actual fraud perpetrated by George Sanders in the procurement of his naturalization.

3. The burden was upon the defendants of proving that the action of the District Court of the United States for Puerto Rico in the case of United States of America v. George Sanders, No. 2679,

---

3 8 U.S.C.A. § 738(d).

4 United States v. Herberger; D.C.W. D.Wash.1921, 272 F. 278; United States v. Mickley, D.C.E.D.Mich.1942, 44 F. Supp. 735.

5 United States v. Fischer, D.C.S.D. Fla.1942, 48 F.Supp. 7.

6 No opinion for publication.

Civil,[6] in revoking and setting aside the order whereby George Sanders was naturalized was the result of actual fraud committed by George Sanders in procuring the order of naturalization.

4. Neither the record alone in the case of United States of America v. George Sanders in the District Court of the United States for Puerto Rico, No. 2679, Civil,[6] nor the record in that case coupled with the evidence offered in the present case are sufficient in law to sustain a finding that the action of that court in revoking and setting aside the order naturalizing George Sanders was the result of actual fraud.

5. Hans Hermann Sanders, the plaintiff in this case, is entitled, pursuant to the provisions of the Act of October 14, 1940, 54 Stat. 1160, Section 339, 8 U.S.C.A. § 739, to a Certificate of Citizenship.

---

[6] No opinion for publication.