Lino Pimentel CEPO, Plaintiff,

v.

Herbert BROWNELL, Jr., as Attorney General of the United States, Defendant.

No. 35318.

United States District Court
N. D. California, S. D.

Dec. 21, 1956.

Supplemental Opinion Jan. 17, 1957.

Jackson & Hertogs, San Francisco, Cal., for plaintiff.

Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for defendant.

GOODMAN, District Judge.

Plaintiff seeks a judgment declaring him to be a United States citizen pursuant to Section 360 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1503, which provides that an action for such a declaratory judgment may be instituted by any person within the United States who claims a right or privilege as a national of the United States which is denied on the ground that he is not a national. The right denied plaintiff on the ground that he is not a national was a certificate of citizenship which Section 341 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1452, provides shall be furnished to any person who proves to the satisfaction of the Attorney General that he derived United States citizenship from a citizen father.

The Government urges that the denial of a certificate of citizenship is not a denial of such a right as will support an action for a declaratory judgment pursuant to Section 360. This Court has previously regarded the denial of a certificate of citizenship as an adequate basis for an action pursuant to Section 360. Laranjo v. Brownell, D.C.1954, 126 F.Supp. 370. The reasons advanced by the Government for the adoption of a contrary view are not persuasive.

This cause was submitted upon the record of the administrative proceedings relative to plaintiff's application for a certificate of citizenship. No material fact is in dispute. It is conceded that plaintiff is a citizen if his father was a citizen on April 27, 1930 when plaintiff was born. Plaintiff's father's status as a citizen on that date in turn depends entirely upon the effect to be given a decree of the United States District Court of Massachusetts on April 27, 1925 cancelling a certificate of naturalization theretofore issued to his father, plaintiff's grandfather.

Plaintiff's grandfather, a native of Portugal, was naturalized in the United States District Court, Boston, Massachusetts on June 29, 1888. He went to Portugal about a year thereafter and apparently never returned to the United States. Plaintiff's father was born in Portugal on December 5, 1900. He was admitted to the United States as a citizen in 1919 and resided here until 1926 when he returned to Portugal. Plaintiff was born in Portugal on April 27, 1930. The United States State Department issued him a United States passport in Portugal, and he was admitted to the United States on September 3, 1949 as a United States citizen. He has since resided in this country. In 1954, he made a visit to Portugal and was readmitted to the United States as a citizen.

The denaturalization of plaintiff's grandfather in 1925 was the result of a proceeding pursuant to Section 15 of the Act of June 29, 1906, 34 Stat. 601, 8 U.S. C. § 405 (1934 Ed.) which provided that:

"It shall be the duty of the United States district attorneys for the respective districts, upon affidavit showing good cause therefor, to institute proceedings in any court having jurisdiction to naturalize aliens in the judicial district in which the naturalized citizen may reside at the time of bringing the suit, for the purpose of setting aside and cancelling the certificate of citizenship on the ground of fraud or on the ground that such certificate of citizenship was illegally procured. In any such proceedings the party holding the certificate of citizenship alleged to have been fraudulently or illegally procured shall have sixty days personal notice in which to make answer to the petition of the United States; and if the holder of such certificate be absent from the United States or from the district in which he last had his residence, such notice shall be given by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the State or the place where such suit is brought.

"If any alien who shall have secured a certificate of citizenship under the provisions of this Act shall, within five years after the issuance of such certificate, return to the country of his nativity, or go to any other foreign country, and take permanent residence therein, it shall be considered prima facie evidence of a lack of intention on the part of such alien to become a permanent citizen of the United States at the time of filing his application for citizenship, and, in the absence of countervailing evidence, it shall be sufficient in the proper proceeding to authorize the cancellation of his certificate of citizenship as fraudulent, and the diplomatic and consular officers of the United States in foreign countries shall from time to time, through the Department of State, furnish the Department of Justice with the names of those within their respective jurisdictions who have such certificates of citizenship and who have taken permanent residence in the country of their nativity, or in any other foreign country, and such statements, duly certified, shall be admissible in evidence in all courts in proceedings to cancel certificates of citizenship."

On the basis of a certificate executed on April 24, 1924 by the United States Vice-Consul, Horta Fayal, Azores, Por-

tugal, that plaintiff's grandfather had established permanent residence in Portugal within five years after his naturalization, the United States District Attorney for Massachusetts, on October 27, 1924, filed a petition to cancel his certificate of naturalization. Summons was issued and plaintiff's grandfather was directed to appear and show cause on the 9th of February, 1925 why the certificate of naturalization issued to him on June 29, 1888 should not be cancelled. A return of service was made by the United States Marshal showing that a copy of the summons and petition was mailed to plaintiff's grandfather in care of the United States Vice-Consul at Horta Fayal, Azores, Portugal on February 6, 1925. On April 27, 1925, the United States District Court, Boston, Massachusetts entered an order cancelling his certificate of naturalization.

Plaintiff urges that the decree of denaturalization was void and of no effect because plaintiff's grandfather was not personally served with notice of the denaturalization proceeding and the substitute service was not according to the law of Massachusetts as required by Section 15. We do not reach this question, however, because, in my opinion, there is a more fundamental basis upon which decision in this cause should rest.

The denaturalization decree entered on April 27, 1925, even if valid, could affect the derivative citizenship which plaintiff's father acquired at birth twenty-five years earlier only if the decree operated to nullify not only the naturalization certificate of plaintiff's grandfather but all derivative rights flowing from it. In my opinion, the denaturalization decree did not have that effect.

Prior to 1940, the naturalization statutes did not state the consequences of the cancellation of a certificate of naturalization. In the Nationality Act of 1940 the Congress specified that the cancellation of a certificate of naturalization should not deprive a wife or child of the denaturalized citizen of their derivative citizenship unless the cancellation was for actual fraud. Section 338

(d), 8 U.S.C. § 738(d), 1940 Ed. The Immigration and Nationality Act of 1952, the presently effective statute, carried forward this provision of the 1940 Act in respect to denaturalization decrees issued under the provisions of the 1940 Act. Section 340(e), 8 U.S.C.A. § 1451(e). It gave a slightly different effect to future denaturalization decrees. It provided that the derivative citizenship of a wife or child of a naturalized person should be annulled if the person were denaturalized on the ground that he had procured his naturalization by "concealment of a material fact or by willful misrepresentation." This change was necessary because the 1952 Act substituted "concealment of a material fact or by willful misrepresentation" for "fraud" as a ground for denaturalization. In addition to this change, the 1952 Act gave greater effect than did the 1940 Act to naturalization decrees based on other grounds, including the ground of presumptive fraud arising out of the establishment by the naturalized person of a permanent residence abroad. The Act provided that such denaturalization decrees should annul the derivative citizenship of the spouse or child of the denaturalized person *unless the spouse or child was living in the United States at the time the decree was entered.*

Were the provisions of either the 1940 Act or the 1952 Act applicable in this cause, it is apparent that plaintiff's derivative citizenship would be preserved since his father was living in the United States at the time of his grandfather's denaturalization. But, the provisions of both Acts by their terms operate only prospectively. Plaintiff's status depends upon the state of the law in 1925 when his grandfather's certificate of naturalization was cancelled. There is only meager and conflicting judicial authority to fill the void that existed in the statutory law prior to 1940.

A single opinion, Rosenberg v. United States, 3 Cir., 1932, 60 F.2d 475, stands in the books as authority that a certificate of naturalization cancelled for actual fraud in its procurement is such a

nullity from the outset that no derivative citizenship can rest upon it. But, the statement to that effect in that opinion amounts to no more than a dictum. Certainly, it cannot be regarded as an established principle of law. As recently as 1949, the United States Supreme Court in United States ex rel. Eichenlaub v. Shaughnessy, 338 U.S. 521, 70 S.Ct. 329, 94 L.Ed. 307, sought other grounds for a decision which the Government suggested could be rested on the ground that cancellation of a naturalization certificate for fraud in its procurement annulled it ab initio.

In an opinion in 1933, In re Findan, 4 F.Supp. 189, the United States District Court for Rhode Island considered the effect of the cancellation of a naturalization certificate for fraud presumed from the establishment by the naturalized citizen of permanent residence abroad within five years after naturalization. The Court held that denaturalization on that basis did not operate to annul the derivative citizenship of children of the denaturalized person who were living in the United States and exercising the rights of citizens. The Court noted a 1931 ruling of the Attorney General that denaturalization for presumptive fraud nullified the derivative citizenship of the wife and child of the denaturalized person. But, the Court pointed out that the Attorney General's ruling applied to a wife and child who had never lived in the United States and thus was not a precedent for disturbing the status of persons who had made their homes in this country in reliance upon their United States citizenship.

Since 1940, when the Congress specified the effect of denaturalization upon derivative citizenship, two courts have considered the prior law on the subject and arrived at divergent conclusions. In In re Bolter, 1946, 66 F.Supp. 566, the United States District Court for the Southern District of California accepted the view expressed in In re Findan, and held that Section 338(d) of the Na-

tionality Act of 1940 was merely declaratory of the prior law.

The Court of Appeals for the Second Circuit in Battaglino v. Marshall, 1949, 172 F.2d 979, 980, disagreed. The Court stated that a certificate of naturalization cancelled for actual fraud in its procurement is a nullity and cannot be the basis of derivative rights of citizenship, citing Rosenberg v. United States, supra. The Court reasoned that a decree of denaturalization based upon proof of actual fraud differed from a decree based upon presumptive fraud only in the type of evidence supporting it. Consequently, it ruled, the effect of the decree would be the same in either case.

This reasoning is valid enough as an application of the traditional legal principle that a decree is nullified by fraud in its procurement. But, the conclusion as to the effect of such nullity upon derivative rights in the naturalization process is not warranted.

The importance of protecting to the utmost the integrity of the naturalization process cannot be gainsaid. But, by viewing a cancelled certificate of naturalization as a nullity, a Court cannot turn back the clock and wipe out all that was done on the strength of the certificate before it was cancelled. While it was outstanding it carried with it all the rights and privileges of citizenship. A personal status, such as citizenship, officially recognized and relied upon for a substantial period of time, in this case for more than a quarter of a century, cannot reasonably be denied all legal significance.[1] The unnecessary disruption of lives and settled transactions that would result is a compelling reason for a more flexible approach.

To hold that the cancellation of a naturalization certificate for fraud or illegality in every instance annuls the derivative citizenship of innocent persons, who have established their homes in this country as citizens, would result in serious hardship without perceptible benefit

1. Cf. United States ex rel. Brancato v. Lehmann, 6 Cir., 1956, 239 F.2d 663.

to the United States. Since 1940, the Congress has recognized the equity of preserving, within specified limits, derivative citizenship flowing from an ancestor's naturalization certificate, subsequently cancelled. In my opinion, the effect of pre-1940 cancellations upon derivative citizenship still being an open question, the preferable course is to accord them no greater effect than the Congress has given to post-1940 cancellations.

A judgment declaring plaintiff to be a citizen of the United States will enter upon findings presented according to the Rules.

### Supplement to Opinion.

Subsequent to the filing of the court's opinion in this matter on December 21, 1956, my attention was called to the case of Manha v. Brownell, D.C., 146 F.Supp. 411, in which Judge Halbert, sitting in the Northern Division of this District on November 19, 1956 filed a decision and opinion in which he reached the opposite conclusion on substantially similar facts.

Thus there now appear in the record two diametrically opposite decisions of judges of the same court upon the same question.

Judges of a multiple judge District Court by tradition and comity customarily follow a previous decision of a brother judge upon the same question, except in unusual or exceptional circumstances. See Williams v. Tide Water Associated Oil Company, D.C.W.D. Wash.1954, 125 F.Supp. 675; United States v. Firman, D.C.W.D.Pa.1951, 98 F.Supp. 944; Mayer v. Marcus Mayer Co., D.C.E.D.Pa.1938, 25 F.Supp. 58.

The explanation of these opposing decisions is that at no time prior to the filing of my decision, was I ever advised of either the pendency of Manha v. Brownell or of the decision in that case. Decisions of the judges of the Southern Division are not filed in the Clerk's office of the Northern Division and likewise decisions of the Northern Division judge are not filed in the Clerk's office

of the Southern Division. I am authorized to say for Judge Halbert that he at no time had been advised of the pendency of the Cepo case until he received a copy of my opinion.