**UNITED STATES of America,**
**Plaintiff,**

v.

**Rosario MILANA, Defendant.**

**No. 6800.**

United States District Court
E. D. Michigan, S. D.
Jan. 16, 1957.

Fred W. Kaess, U. S. Atty., Dwight K. Hamborsky, Asst. U. S. Atty., Detroit, Mich., for plaintiff.

Harry Kobel, Rosin & Kobel, Detroit, Mich., for defendant.

LEVIN, District Judge.

Paolo Milana has moved to vacate and set aside an order of this court entered April 20, 1936 which purported to cancel his father's (Rosario Milana's) certificate of naturalization. I am the successor to the judge who rendered this judgment. Rosario, who died in 1947, was ordered denaturalized, pursuant to 8 U.S.C.A. § 405 (1927),[1] for having made permanent residence in his native country within five years of his naturalization. This was, under the statute, prima-facie evidence of his lack of intent to become a permanent citizen of the United States.

Paolo, who would now be a citizen of the United States under his father's naturalization if the judgment of denaturalization were declared void, alleges that the denaturalization judgment is void because this court lacked jurisdiction over the person of his father. Jurisdiction is attacked on the ground that Rosario was never served with notice of the denaturalization proceedings, as required by statute. 8 U.S.C.A. § 405 (1927). The Government contends the service was valid and that, in any event the movant, Paolo Milana, is not a proper party to bring this motion. The Government points to Rule 60(b) of F.R.Civ.P., 28 U.S.C.A. under which the court may give relief from judgments on the motion of a "party or his legal representative."

Paolo was not born at the time of the order but even if he were then in existence his derivative citizenship would not have given him standing to be heard in a proceeding to revoke his father's citizenship. See United States ex rel. Harrington v. Schlotfeldt, 7 Cir., 1943, 136 F.2d 935, 939; San-

1. Now 8 U.S.C.A. § 1451.

ders v. Clark, D.C.E.D.Pa.1948, 76 F. Supp. 489. The Supreme Court in Wetmore v. Karrick, 1907, 205 U.S. 141, 27 S.Ct. 434, 51 L.Ed. 745, by implication, however, indicated that a court may, on its own motion, set aside a void judgment provided notice has been given of such contemplated action, and an opportunity to be heard to the party adversely affected. There is, of course, such notice in this case.

There are numerous state court cases in accord with the Supreme Court. See, for example, Ballard Savings & Loan Ass'n v. Linden, 1936, 188 Wash. 490, 62 P.2d 1364; Schuster v. Schuster, 1952, 75 Ariz. 20, 251 P.2d 631; Mills v. Richardson, 1954, 240 N.C. 187, 81 S.E.2d 409, and others collected in 49 C.J.S., Judgments, § 287 (1947).

 The conclusion that the judgment in question is void is inescapable. It is almost too elementary to bear repeating that a judgment rendered without valid personal or substituted service on the defendant is void. Pennoyer v. Neff, 1877, 95 U.S. 714; Williams v. State of North Carolina, 1945, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577. There was no personal service on Rosario Milana and the Supreme Court requires "strict and literal compliance with statutory provisions" for constructive or substituted service. Galpin v. Page, 1873, 18 Wall. 350, 369, 85 U.S. 350, 369, 21 L.Ed. 959. Particularly with reference to citizenship revocation proceedings, the requirement of literal compliance with statutes for substituted service has been strictly enforced. In United States v. Sotis, 7 Cir., 1942, 131 F.2d 783, a denaturalization decree was vacated because the Illinois statute for substituted service had not been strictly followed. The court stated:

"In considering the question presented, it is pertinent to observe, so we think, that constructive service is in derogation of the common law, and that courts have, with great unanimity, required a strict and *literal* compliance with a statute which authorizes such service." (Emphasis added) at page 874.

Similarly, in United States v. Kiriaze, 5 Cir., 1949, 172 F.2d 1000, a denaturalization decree was vacated for failure to comply with the Mississippi substituted service statute. The court reasoned:

"When, then, the United States, as here, seeks not by actual notice to the citizen but by substituted service by publication to deprive him of this priceless right, it must strictly comply with the statute authorizing such service.

"That it did not strictly comply with the statute, we think may not be doubted. Matters standing thus, appellant will not be permitted in this kind of case to say that the departures from strict compliance were not material. United States v. Sotis, 7 Cir., 131 F.2d 783. It is for the legislature to prescribe the steps, for the litigant to comply with them." At page 1002.

 The statute in effect at the time the order of April 20, 1936 was made provided for substituted service in denaturalization proceedings, 8 U.S.C.A. § 405 (1927), and dispensed with the necessity of personal service upon two conditions:

(1) "if the holder of such certificate be absent from the United States or from the district in which he last had his residence * * *."

(2) "notice shall be given by publication in the manner provided for the service of summons by publication or upon absentees by the laws of the State or the place where such suit is brought."

The record discloses that the first condition was met. The second condition was not met because of two serious defects in the use of substituted service.

First, the statute then in effect in Michigan for service on a nonresident by publication required registered mailing of a copy of the order of publication,

and proof by affidavit of the registered mailing. M.S.A. § 27.779 (1938), Comp. Laws 1929, § 14112 provided:

"In all cases except where personal service of such order shall have been had as hereinbefore provided, and excepting further in case of unknown heirs or other unknown defendants, a copy of such order shall be mailed to such absent, concealed or non-resident defendant at his last known post office address by *registered mail, and a return receipt demanded therefor. Proof by affidavit shall be required of such mailing* and the official return receipt therefor shall be attached to said affidavit if one (1) shall have been received, which receipt shall be deemed sufficient proof of the service upon said defendant of such copy of said order. If such return receipt shall not be received then said order shall be published as hereinbefore provided." (Emphasis added.)

The record contains no affidavit that the order of publication was mailed to the defendant by registered mail and that a return receipt was demanded as required by the Michigan statute. The affidavit that is in the record recites that the order was mailed in the United States Post Office in Detroit, Michigan, but does not state that such mailing was by registered mail and that a return receipt was demanded. Thus, there was no compliance with the statute and no effective substituted service.

Second, the record discloses a delay of three and one-half months between the date of the return that personal service could not be made and the date of the execution of the affidavit of inability to make personal service. This is a fatal defect in Michigan where the Supreme Court of Michigan has held that a lapse of twenty-one days between return of service and the affidavit of inability to serve renders the service invalid. The court said in Union Guardian Trust Co. v. Grevnin, 1933, 261 Mich. 344, 246 N.W. 143.

"We need only discuss the first objection, for the delay was fatal. Proper service is necessary for the court to acquire jurisdiction over the parties. Personal service is always desirable and publication may be had only when conditions are such that it becomes permissible under the statute [3 Comp.Laws 1929, § 14109]. There is no showing whatsoever of the cause of the delay, nor was it a very brief one, as in Adams v. Wayne Circuit Judge, 98 Mich. 51, 56 N.W. 1051. There is no presumption that the inability to serve defendants continued for the twenty-one days that elapsed between the return day of the summons and the date of the affidavit for the order of publication. The affidavit, dated November 30, 1931, did not show that any effort had been made to serve defendants after November 9, 1931. Absence from customary places may be a temporary condition, and does not justify the inference that it continued for twenty-one days later when the affidavit was made not as to the condition at that time, but as to that existing some three weeks previous thereto. In New York Baptist Union v. Atwell, 95 Mich. 239, 54 N.W. 760, a delay of five days between the making of the affidavit and order of appearance was held fatal. Also see Adams v. Wayne Circuit Judge [supra]. An order of publication must be based upon facts existing at the time it is made. Cohn v. Kember, 47 Cal. 144; Rockman v. Ackerman, 109 Wis. 639, 85 N.W. 491; Campbell v. McCahan, 41 Ill. 45." 261 Mich. at pages 347, 348, 246 N.W. at pages 143, 144.

The requirement that it must appear at the time substituted service was employed that personal service was unobtainable has not been met in this case. As a result, this court did not acquire jurisdiction over the defendant and it will, therefore, purge its records of this void judgment.