**Daniel GARCIA and Carol Garcia, Guardians of Daniel Garcia, Jr., Petitioners,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent.**

**No. 90–883 V.**

United States Court of Federal Claims.

April 21, 1994.

Robert T. Moxley, Cheyenne, WY, attorney of record for petitioners.

Mary Hampton Mason, Dept. of Justice, Washington, DC, for respondent.

OPINION

WIESE, Judge.

This case is before the court for correction of an error in the judgment.

*Facts*

On July 15, 1992, the special master entered a decision in this case quantifying the damages due petitioners for the vaccine-related injuries suffered by their son, Daniel Garcia, Jr. Included as part of the special master's decision was a table indicating the amounts that petitioners were to receive as annual compensation under the National Childhood Vaccine Injury Act of 1986, as amended, 42 U.S.C. §§ 300aa–1 to 300aa–34 (1988 & Supp. IV 1992).[1] Unfortunately, the table contained a typographical error: the annual compensation awarded for "Years 42 and beyond" was incorrectly entered in the table as "$50,095." The intended amount was $50,595 annually—that is, a difference of $500 per year. This error initially escaped petitioners' notice; thus, within the statutory 30–day period during which the matter remained open for examination, petitioners took no action. As a result, on August 19, 1992, the Clerk entered judgment in accordance with the special master's decision. *See* 42 U.S.C. § 300aa–12(e)(1), (3).

Later, however, before filing an election to accept the award, petitioners discovered the typographical error and brought it to the special master's attention. To remedy the situation, on October 27, 1992, the special master filed an "Amended Decision" that purported to vacate the previous decision. This second decision corrected the typographical error and explained that the award was otherwise to be implemented exactly as specified in the decision of July 15, 1992.

---

1. The table appeared as follows:

| Years | Yearly Totals |
| --- | --- |
| Years 1–10 | $62,915 |
| Years 11–41 | $58,095 |
| Years 42 and beyond | $50,095 |

Thereafter, the thirty-day period for review again was allowed to pass. As a result, a new judgment, filed on December 8, 1992, was entered on the basis of the special master's October 27th decision.

In hindsight, the parties realized that this attempt to correct the typographical error contained in the first decision had unintended consequences. Under the Vaccine Act, compensation for injuries associated with a vaccine administered before the effective date of the Act—as in the present case—is limited to expenses incurred after the date of judgment. 42 U.S.C. § 300aa–15(a), (b). In our case, however, because petitioners never elected to accept the judgment of August 19, 1992—due to the typographical error it incorporated—they received no funds at all pursuant to that judgment. Furthermore, when the effective date of the judgment was advanced from August 19 to December 8, 1992, petitioners were deprived of the compensation they would otherwise have been entitled to receive for that intervening 111–day period.

Seeking redress for the unintended result of the special master's Amended Decision, petitioners once again requested the special master's assistance. On October 25, 1993, petitioners filed a motion with the special master requesting a lump sum payment to provide for the 111 days of previously awarded—but not collected—compensation owing for the period between August 19 and December 8, 1992. This time, however, the special master questioned his own authority to entertain such a motion and to alter a judgment of the court. As a result, he recommended that the Clerk assign the motion to a judge of the court for resolution. It is in this posture that the case is currently before us.

## Discussion

### A. Invalidity of the Judgment of December 8, 1992

■ A special master's jurisdiction under the Vaccine Act ends either upon the filing of an appeal from the special master's decision pursuant to § 300aa–12(e)(1) of the Act, or, if no appeal is taken, upon the entry of judgment by the Clerk of the Court pursuant to § 300aa–12(e)(3) of the Act. *See Patton v. Secretary of Dep't of Health & Human Servs.*, 28 Fed.Cl. 532 (1993). The occurrence of either of these events marks the end of the fact-finding function and, hence, the end of the special master's authority to act.

■ Because his jurisdiction ended when the Clerk entered judgment, the special master had no authority to vacate the judgment of August 19, 1992. Thus, the order of October 27, 1992, purporting to vacate the August 19th judgment and to substitute an amended decision, is a nullity. As a result, the judgment of December 8, 1992 has no legal effect and must be vacated. The situation would have been different, of course, had petitioners requested the special master's help in correcting the typographical error prior to the expiration of the appeal period. Under those circumstances, and absent the pendency of an appeal, the special master could have made the requested correction. *See American Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 145, 79 S.Ct. 170, 177, 3 L.Ed.2d 172 (1958) (recognizing the power of every tribunal to correct its own mistakes).

#### 1. Authority to Set Aside a Void Judgment

■ Respondent asserts that this court lacks jurisdiction to set aside the judgment of December 8, 1992. We disagree. Under Rule 60(b) of our Rules, a void judgment may be set aside "within a reasonable time." This rule is derived from the principle that a court empowered to make decisions is necessarily empowered to nullify any of its decisions that were entered without authority. Thus, in providing that a court may set aside a void judgment, Rule 60(b) "merely states the inherent power of the court." 7 James W. Moore & Jo D. Lucas, Moore's Federal Practice ¶ 60.18[8] (2d ed. 1993); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991) (stating that "[i]t has long been understood that '[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution,' powers 'which cannot be dispensed with in a Court, because they are necessary to the exercise of all

others'") (citing *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812)).[2]

In arguing that this court has no authority to set aside the judgment of December 8, 1992, respondent relies heavily on the decision in *Widdoss v. Secretary of Health & Human Servs.*, 989 F.2d 1170 (Fed.Cir.), *cert. denied, Widdoss v. Shalala*, —— U.S. ——, 114 S.Ct. 381, 126 L.Ed.2d 331 (1993). This reliance is unfounded. *Widdoss* held that "invocation of RUSCC 60(b) to authorize review *of the merits* of [a] petition for review is to no avail, because such a rule cannot be used to escape a jurisdictional limitation." *Id.* at 1177 (emphasis added). The case proclaims no new rule. It is well established that Rule 60 cannot be used to extend the statutory appeal period. *See* 7 Moore & Lucas, Moore's Federal Practice ¶ 60.18[8]. This principle, however, has no application to the matter at hand. Respondent has failed to perceive the distinction between an unauthorized use of the Rule—extending a legislatively prescribed period for review on the merits—and an authorized use—setting aside a judgment issued in the name of the court by one not empowered to do so.

### 2. Action on a Motion

■ In applying Rule 60(b) to this case, we note that the Rule assumes that the court will act in response to a motion from the party seeking relief from the judgment. However, "it has been held that the court on its own motion may set aside a void judgment provided notice has been given of its contemplated action and the party adversely affected has been given an opportunity to be heard." 11 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2862 (1973) (citing *United States v. Milana*, 148 F.Supp. 152 (D.Mich.1957)).

Here, the court has not been presented with a motion for 60(b) relief. Rather, plaintiffs' motion is styled "Motion for *Nunc Pro Tunc* Correction of Judgment Date and to Compel Payment." Plaintiffs characterize the failure of the second "judgment" to provide for payments beginning on the date of the original judgment as a second clerical error. Thus, their motion relies on Rule 60(a) rather than Rule 60(b).

The Second Circuit was presented with a similar situation in *McLearn v. Cowen & Co.*, 660 F.2d 845 (2d Cir.1981). After citing the above passage from Wright & Miller, that court resolved the problem as follows:

> [D]efendants well understood that the thrust of plaintiff's motion was to vacate the [earlier] order, even though plaintiff's counsel had labelled the motion one to correct a clerical error under Rule 60(a). The failure of plaintiff's counsel to refer to the *proper rule number* does not prevent us from granting the relief that plaintiff in substance asked for, especially where defendants had notice of and argued against that relief. Hence, we may grant such relief on our own motion.

*Id.* at 849 (footnote omitted).

We find this reasoning equally applicable to the case at hand. Plaintiffs' motion—which requests that the judgment be "reissued" to the date of the original judgment—provides notice to respondent that there is some question as to the legal effect of the judgment of December 8, 1992. Moreover, the court's tentative views on this issue were discussed with the parties prior to briefing. Thus, respondent has had both notice and an opportunity to respond.

### B. *Correction of the Clerical Error*

■ Having concluded that this court may—and indeed, must—set aside the judgment of December 8, 1992, we now turn to the question of correcting the typographical error contained in the decision of July 15, 1992 and incorporated into the August 19, 1992 judgment. That correction may be accomplished by the court under Rule 60 of the rules of the court. Paragraph (a) of Rule 60 provides:

> Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court *at any time* of

---

**2.** To the extent that respondent's brief suggests that only Article III, and not Article I, courts have the power to vacate judgments issued in their name but without authority, we find this suggestion to be without substance.

its own initiative or on the motion of any party and after such notice, if any, as the court orders.

RUSCC 60(a) (emphasis added). Thus, correction of such mistakes is liberally allowed:

The rationale for the provision that a motion to correct a clerical error may be made "at any time" is that the judgment simply has not accurately reflected the way in which the rights and obligations of the parties have in fact been adjudicated. In those circumstances, the goals of finality and repose are outweighed by the equitable goal of allowing a party who has in fact established his right to relief to receive that relief.

*In re Frigitemp Corp.,* 781 F.2d 324, 327 (2nd Cir.1986).

The error in the dollar amount of the compensation award was clearly a "clerical mistake" within the meaning of Rule 60(a). Hence, this court has the authority to correct that error.

### Conclusion

For the reasons given above, the judgment entered on December 8, 1992 is vacated; the Clerk is directed to reinstate the judgment of August 19, 1992. The amount of compensation for "Years 42 and beyond" in the judgment of August 19, 1992 shall be corrected to read "$50,595."

This case is hereby remanded to the special master for the purpose of determining the amount owing to petitioners.[3]

---

**3.** Although we leave the solution of the problem to the special master, we would point out here the unacceptability of the corrective action proposed by respondent. At oral argument, respondent sought to persuade the court that correction of the mistake could be accomplished by a supplementary payment to petitioners equal to the borrowing cost of the amount they would receive late during each year of the annuity. This position was based on the view that the delay in initiation of annuity payments (from August 19, 1992, to December 8, 1992—a total of 111 days) affected only the *timing* of petitioners' annuity payments rather than the accumulated value of those payments. Respondent's position is not correct. The annuity payments ordered by the special master were to begin in August 1992, and continue over Daniel Garcia, Jr.'s lifetime. Thus, unless restored, the "missing" payments would represent a permanent loss to petitioners.